535 So.2d 1371 (1988)
Patricia VICKERY
v.
STATE of Mississippi.
No. 57950.
Supreme Court of Mississippi.
November 30, 1988.
*1373 Donald J. Steighner, Columbus, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen., by Harrison S. Ford, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ZUCCARO, Justice, for the Court:
Patricia Vickery was indicted, tried and convicted in the Circuit Court of Lowndes County for possession of more than one kilogram of marijuana. Vickery was sentenced to eighteen years in the custody of the Mississippi Department of Corrections and fined $40,000.00. On appeal, Vickery assigns the following as error:
(1) THE DELAY OF THREE AND ONE-HALF YEARS FROM INDICTMENT AND ARRAIGNMENT TO TRIAL CONSTITUTED A DENIAL OF VICKERY'S RIGHT TO A SPEEDY TRIAL.
(2) THE TRIAL COURT ERRED IN ADMITTING THE CONTENTS OF APARTMENT 119 AT THE RIVERGATE APARTMENT COMPLEX INTO EVIDENCE.
(3) THE STATE FAILED TO PROVE THAT PATRICIA VICKERY HAD DOMINION AND CONTROL OVER APARTMENT 119.
(4) THE TRIAL COURT ERRED IN ALLOWING THE STATE'S WITNESS, HARRY DOWDLE, TO MAKE PREJUDICIAL COMMENTS OVER THE OBJECTION OF THE DEFENSE COUNSEL.
We find all assignments have merit and therefore, we reverse, render and appellant is discharged.
The appellant, Patricia Vickery, was arrested on January 17, 1983. Vickery was indicted on February 18, 1983 of possession of more than one kilogram of marijuana. Vickery was arraigned and pled innocent on February 23, 1983. The trial did not take place until August 28, 1986, approximately one thousand two hundred eighty three (1,283) days later.
The facts leading to the arrest of Patricia Vickery are as follows:
Patricia was living in a home with a man named Gary Hall at Route 7, Box 1995, Perkins Road in Columbus, Mississippi. Gary Hall was arrested at the National Bank of Commerce in Columbus, Mississippi after a bank employee witnessed him acting suspiciously while placing items in a safety deposit vault. After the arrest of Gary Hall, the police obtained search warrants to search Hall's home on Perkins Road and apartment number 119 at the Rivergate Apartment complex in Columbus. The police were aware of the connection between Gary Hall and apartment number 119 because they found a rent receipt for the apartment in Gary Hall's vehicle when they inventoried it following Hall's arrest.
The search of the Perkins Road home where Patricia Vickery lived yielded nothing to suggest criminal activity. However, the search of apartment number 119, rented to a Pat Williams, produced 142.12 pounds (64.5 kilograms) of marijuana. Following the seizure of the marijuana in that apartment, the officers returned to the Perkins Road address and arrested Patricia Vickery. A jury returned a guilty verdict against Patricia Vickery and on September 2, 1986 she was sentenced to serve 18 years in the Mississippi Department of Corrections and fined $40,000.00.

WAS PATRICIA VICKERY DENIED THE RIGHT TO A SPEEDY TRIAL?
Lowndes County has four circuit court terms: 1) beginning the second Monday in February for eighteen days 2) beginning *1374 the second Monday in May for eighteen days 3) beginning the third Monday in August for eighteen days and 4) beginning the second Monday in November for twenty four days.
The right to a speedy trial is secured to Vickery by the Sixth Amendment and the Fourteenth Amendment to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution of 1890. Mississippi Code Ann. § 99-17-1 (Supp. 1981) requires that a defendant be brought to trial within 270 days of arraignment by providing that:
Unless good cause can be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred and seventy days after the accused has been arraigned. (Emphasis added)
The record reflects that approximately one thousand two hundred and eighty three (1,283) days elapsed between the time of arraignment and the time of trial. The following chronology of events will be helpful to illustrate the unreasonable amount of delay existing before Vickery went to trial.

 Opening of February Term 02/14/83
 Indictment 02/18/83
 Arraignment and entry of not
 guilty plea 02/21/83
 Defendant's motion for a sample
 of the marijuana and for a
 continuance 02/22/83
 Opening of May Term 05/09/83
 Defendant's motion for continuance 05/26/83
 Opening of August Term 08/15/83
 Defendant's motion for continuance 08/19/83
 Opening of November Term 11/14/83
 Court continued case on its own
 motion until following term
 stating only "for good cause
 shown" 12/09/83
 Opening of February Term 02/13/84
 Court continued case on its own
 motion until following term
 stating "for good cause shown" 03/02/84
 Opening of May Term 05/14/84
 Court continued case on its own
 motion until next term stating
 only "for good cause shown" 06/01/84
 Opening of August Term 08/20/84
 Defendant and State make joint
 motion for continuance 08/27/84
 Motion for alias capias, which
 was granted, issuance for Pat
 Vickery for reason that
 defendant's bonding company,
 Delta Bonding, was defunct 08/29/84
 Opening of November Term 11/12/84
 State begins the process to have
 Patricia Vickery extradited from
 Georgia to Mississippi 11/30/84
 Court continues case on its own
 Motion stating only "for good
 cause shown" 12/06/84
 Opening of February Term 02/11/85
 Court continues case on its own
 motion stating only "for good
 cause shown" 03/01/85
 Opening of May Term 05/13/85
 Court continues case on its own
 motion stating only "for good
 cause shown" 05/31/85
 Defendant's motion for continuance 06/04/85
 Opening of August Term 08/19/85
 Court continues case on its own
 motion stating only "for good
 cause shown" 09/08/85
 Opening of November Term 11/11/85
 Court continues case on its own
 motion stating only "for good
 cause shown" 12/06/85
 State makes motion which court
 granted requesting that court
 order Sheriff of Lowndes County
 to obtain custody of Vickery who
 was confined in Georgia
 Department of Corrections. Trial
 set for February 1986 Term 01/30/86
 District Attorney's Office
 advised that Patricia Vickery
 could be brought to Mississippi 02/07/86
 Opening of February Term 02/10/86
 State makes motion requesting
 order of court directing Vickery
 to provide blood, hair and
 handwriting samples 02/21/86
 Order directing Vickery to provide
 samples 02/24/86
 State's motion for continuance
 requesting several months in order
 to get results
*1375 of hair, blood and handwriting
 samples 02/28/86
 Opening of May Term 05/12/86
 State finally provides discovery 05/21/86
 Motion of defendant, joined by
 state, for continuance 05/28/86
 State makes motion, which was
 granted, requesting order of
 court directing Vickery to
 provide handwriting samples 06/17/86
 Opening of August Term 08/18/86
 State moves for continuance due to
 unavailability of crime lab
 witnesses on August 25, 1986 08/22/86
 Trial moved to August 28, 1986 08/22/86
 Motion to dismiss for unnecessary
 delay 08/28/86[1]
According to the record 423 days of the delay were attributable to continuances granted to Vickery. These days toll the running of the statute leaving a 860 day delay attributable to the State.
We held in Payne v. State, 363 So.2d 278 (Miss. 1978) that our speedy trial statute is plain and unambiguous, and it requires that the defendant be tried no later than 270 days after arraignment unless good cause be shown. Generally, a written order to the effect that a motion is "well taken and should be granted" is the equivalent of a judicial determination that good cause existed for the continuance. Nations v. State, 481 So.2d 760, 762 (Miss. 1985). That is, Miss. Code Ann. § 99-17-1 (Supp. 1981) excerpts from the limitations period delays resulting from "good cause." It is impossible, however, for this Court to ignore that eight orders of continuances existed in this record that simply read:
"For good cause shown the following numbered criminal cases are continued to the next regular term of this court, said causes are numbered on the docket of this court as follows ..."
The orders then listed as many as one hundred and twenty-six (126) cases to be continued until the next term of court. We cannot, in good conscience, allow the spirit of Miss. Code Ann. § 99-17-1 (Supp. 1981) to be violated by accepting the eight (8) orders, in their bland and generic form, as showing good cause and thereby tolling the 270 day period. To allow a trial court to circumvent the statute in this manner and to this extent would be tantamount to abolishing the statute.
In our cases involving Miss. Code Ann. § 99-17-1 (Supp. 1981) where the facts reflect that the accused's trial did not commence within 270 days of arraignment, the State bears the burden of establishing that there was good cause for delay. Nations v. State, 481 So.2d at 761. Turner v. State, 383 So.2d 489, 491 (Miss. 1980); Durham v. State, 377 So.2d 909 (Miss. 1979). However, where the record is silent regarding the reason for delay, as the record is silent here, the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue. Nations, 481 So.2d at 761.
We find that Vickery's statutory right to be brought to trial within 270 days was *1376 violated. Vickery was responsible for some delay by virtue of her request for several continuances; however, we deduct those days from the total delay. We will not ignore the fact that the eight continuances stating simply that the case would be continued "for good cause shown" appeared in the record. This manner of continuing a case was not contemplated by this Court when we stated that such language was equivalent to a judicial determination that good cause existed in Nations v. State, 481 So.2d at 762.
We note that the State did not even take the necessary actions to have Vickery transferred from Georgia back to Mississippi until January 30, 1986. The investigator from the District Attorney's Office attempted to have Vickery extradited on November 11, 1984. However, that was the wrong method to use since Vickery was incarcerated in Georgia at the time. The District Attorney's Office even had knowledge of Vickery's incarceration; yet, proceeded to use extradition procedures anyway rather than using the appropriate procedure, which involves a compact between the governors of the states seeking to have the accused returned for trial and the governor of the state in which the accused is incarcerated. Furthermore, the State did not even begin its efforts to prepare its case on the issue of the identity of Vickery and whether or not she was in control of apartment number 119 at the Rivergate complex until January 30, 1986. On January 30, 1986, the State finally made a motion requesting an order of the court directing Vickery to produce blood, hair and handwriting samples. The State then requested a continuance of several months because the samples and prints "would not be analyzed and compared for a period of several months". The State did not even provide discovery until May 21, 1986. It is apparent to this Court that the State made no effort to try Vickery within 270 days in light of the foregoing. The amount of delay was ridiculous and the reasons nonexistent but our analysis does not stop here. Vickery also argues that her constitutional right to a speedy trial protected by the Sixth Amendment to the United States Constitution was violated. We agree.
The constitutional right to a speedy trial, as opposed to § 99-17-1, attaches at the time of formal indictment or information or else when the actual restraints imposed by arrest and holding to answer a criminal charge occur. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). Therefore, the constitutional right to a speedy trial applies only after a person has been accused. In the instant case, Vickery became an "accused" when she was indicted by the grand jury on February 18, 1983.
Once this right attaches, the test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and adopted by this Court must be applied to determine whether the right to a speedy trial has been denied. Wells v. State, 288 So.2d 860 (Miss. 1974).
The Barker court identified four factors to be considered:
(1) Length of delay;
(2) Reason for the delay;
(3) The defendant's assertion of his right to a speedy trial; and
(4) Prejudice resulting to the defendant.
In addition, the United States Supreme Court cautioned that none of these individual factors could completely dispose of the issue. Instead, all four factors must be considered together.
Using the Barker balancing test and taking into consideration the conduct of both the prosecution and the defendant, Vickery, we find that Vickery's constitutional right to a speedy trial has been violated.

1. Length of Delay

Vickery became an accused when the grand jury returned an indictment against her on February 18, 1983. Her trial took place on August 28, 1986. Using these two dates, the delay was one thousand one hundred and ninety two days or three years, six months and eleven days. *1377 This is an extremely lengthy delay when considered in the light of a 423 delay in Beavers v. State, 498 So.2d 788 (Miss. 1986), a 566 day delay in Perry v. State, 419 So.2d 194, 198 (Miss. 1982) and a 298 day delay in Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985) all of which we reversed for violations of the right to a speedy trial. A three and one-half year delay is prima facie unreasonable; therefore, the focus of inquiry shifts to the reason for delay.

2. Reason for Delay

We do not overlook the fact that the defendant, Vickery, made several motions for continuances. However, it is more difficult to overlook the delay caused by the State in light of the facts we noted in the preceding paragraphs in reference to the State's procrastination in requesting the blood, fingerprint and hair samples, in the State's failure to take the appropriate measures to get Vickery moved to Mississippi for trial and by the State's failure to provide discovery. Furthermore, there were eight continuances which stated no reason whatsoever for their justification. Again, where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay we must weigh this factor against the prosecution. Perry v. State, 419 So.2d 194, 199 (Miss. 1982). It is clear that the State was responsible for substantially all the delay in the trial of Vickery's case. It is the burden of the State to see that a defendant receives a speedy trial. Id. This the State did not do in the case sub judice.

3. Defendant's Assertion of His Right

This factor becomes significant because the right to a speedy trial is subject to a knowing and intelligent waiver. Beavers v. State, 498 So.2d 788, 791 (Miss. 1986). Vickery did not make a demand for a speedy trial. However, this is the only factor that weighs against Vickery and it is not dispositive since all factors must be considered together. Beavers v. State, 498 So.2d 788, 790 (Miss. 1986). We must recognize that "a defendant has no duty to bring himself to trial." Kinzey v. State, 498 So.2d 814, 823 (Miss. 1986) (Robertson concurrence); Beavers v. State, 498 So.2d 788, 791 (Miss. 1986); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980); Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101, 115 (1972). We will therefore, "indulge every reasonable presumption against the waiver of a constitutional right" Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177, 1180 (1937) and we "will not presume acquiescence in the loss of a fundamental right". Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093, 1103 (1937). The United States Supreme Court in Barker v. Wingo rejected the rule that a defendant who fails to demand a speedy trial forever waives his right and so do we. Barker, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115. Therefore, we reassert that this factor is not dispositive but must be weighed against the other three factors.

4. Prejudice

Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pre-trial incarceration 2) minimization of anxiety and concern of the accused and 3) limitation of the possibility of impairment of defense. Hughey v. State, 512 So.2d 4, 11 (Miss. 1987) citing Barker, 407 U.S. at 532-33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.
During the period Vickery was incarcerated Vickery was severely beaten by a female inmate causing her to be hospitalized. Vickery suffered a nervous breakdown causing her to be hospitalized again following an occurrence in which a prison guard pointed a handgun loaded with blanks at Vickery and fired six times as a practical joke. Finally, Vickery suffered through two rape attempts upon her while in the prison hospital.
The worst incidence of prejudice occurred when a witness for the State testified that she took Vickery's money as a deposit on apartment 119 at Rivergate Apartment Complex. However, when the receipt for the rent deposit was introduced into evidence it was discovered that the *1378 receipt was signed by an entirely different lady not testifying in the trial at all. The record revealed that almost every witness, including the assistant apartment manager, while testifying, made reference to the fact that their recollection was cloudy in light of the long period of time that had elapsed. We find that this factor weighs heavily in favor of Vickery.
We find that this assignment of error has merit based on an obvious violation of both this appellant's statutory right to be tried within 270 days of arraignment and her constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution.

DID THE STATE FAIL TO PROVE THAT PATRICIA VICKERY HAD DOMINION AND CONTROL OVER APARTMENT 119 AT RIVERGATE APARTMENT COMPLEX?

DID THE TRIAL COURT ERR IN ADMITTING THE CONTENTS OF APARTMENT 119 INTO EVIDENCE?
Patricia Vickery was arrested in her home at Route 7, Box 1995 Perkins Road in Columbus where she was living with her boyfriend, Gary Hall. The arrest occurred after law enforcement officers discovered 142.12 pounds of marijuana in apartment 119, Rivergate Apartment Complex. Apartment 119 was rented to a Pat Williams.
The assistant manager, Rae Ann Graham, of the Rivergate Apartment Complex testified at Vickery's trial that she had rented the apartment. Rae Ann Graham identified Patricia Vickery as the lady to whom she had rented the apartment. Graham further testified that she had taken a deposit for the apartment from Vickery and in return had given Vickery a receipt. However, upon the admission into evidence of the receipt which was found in Gary Hall's automobile, (while police were taking inventory after Hall's arrest) it was discovered that a M. Davis, the apartment manager, had signed the receipt. The apartment maintenance man testified at trial; but, he stated that he could not identify Vickery as the female he had seen entering and leaving the apartment because the passage of time had made his memory fade.
The State stipulated that handwriting experts had concluded that there was reason to doubt that Vickery had prepared any of the writings found on notes in the apartment complex. These notes were signed "Pat". It was also stipulated by the State that the experts had reason to doubt that Patricia Vickery signed an application to the power company for electricity in the apartment. The application was signed by a "Pat Williams". Hair samples were found in a hairbrush in the apartment and in a garbage bag. The State stipulated that an expert determined that known samples taken from Patricia Vickery did not match the samples in the apartment complex.
When the law enforcement officers arrested Vickery they took her key ring. Vickery did not have a key fitting the locks on the apartment in her possession. The foregoing places serious doubt in our minds as to whether or not Patricia Vickery had dominion and control over the apartment at the Rivergate complex. If she did have requisite control, the State failed to prove such control.
The appellant, Vickery, makes the argument that the State did not establish its case against her because it failed to show knowledge of or dominion and control by her over either the marijuana in apartment 119 or over the apartment itself.
The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. Sisk v. State, 290 So.2d 608 (Miss. 1974).

*1379 Constructive possession is discussed in Curry v. State, 249 So.2d 414 (Miss. 1971).
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

Id. at 416. (Emphasis added)
Burnham v. State, 467 So.2d 946, 947-48 (Miss. 1985).
We find that the State even when given all reasonable inferences did not prove possession, actual or constructive, on behalf of Vickery. The only external relationship as required by Curry v. State between Vickery and the marijuana was the relationship between Vickery and Gary Hall. This case is a prime example of a person being held guilty by association. Association will not suffice to satisfy the requirements set forth in Sisk v. State, 290 So.2d 608 (Miss. 1974) and Curry v. State, 249 So.2d 414 (Miss. 1971). The State failed to prove the essential elements of dominion and control over the marijuana found in apartment 119 by Vickery. We reverse based upon such error.

DID THE TRIAL COURT ERR IN ALLOWING THE STATE'S WITNESS, HARRY DOWDLE, TO MAKE PREJUDICIAL COMMENTS OVER THE OBJECTION OF DEFENSE COUNSEL?
Commander of the Columbus-Lowndes Narcotic Unit, Harry Dowdle, was called as a witness by the defense after having already testified during the State's case-in-chief. The defense counsel questioned Dowdle about keys taken from Patricia Vickery when she was arrested. After replying that the keys in Gary Hall's possession opened the locks on the apartment door but that the keys in Vickery's possession did not, Dowdle made the following comments:
THE COURT:
Let him explain it.
HARRY DOWDLE, WITNESS:
I would like to remind you, Mr. Steighner, that the Defendant 
MR. STEIGHNER:
 Your Honor, I would object. He doesn't need to remind me of anything. I think that he is 
THE COURT:
 Let him answer it.
MR. STEIGHNER:
 Explain his answer  and he can explain it.
HARRY DOWDLE, WITNESS:
Q. That the Defendant, Pat Vickery, was arrested several hours later after the search of the Perkins Road house, and it's been my experience that the 
MR. STEIGHNER:
 Your Honor, I'm going to object 
A.  People in the drug business 
MR. STEIGHNER:
 If I may? If I might interrupt the witness and ask him  if it's his experience  he's trying to lecture both the jury and this Court and he's not answering the question. My question was: "Did any of the keys that she had when he arrested her fit any of the locks he had," and he said "no." He's now trying to give speculation to the jury, which is improper. And I so submit.
THE COURT:
Overruled.
HARRY DOWDLE, WITNESS:
A. It's been my experience that people involved in the drug business try very hard and they're very good at covering their tracks. And I'm sure that this Defendant had keys to Apartment 119 
MR. STEIGHNER:
Your Honor, I'm going to object to that 

*1380 THE COURT:
 Sustained.
MR. STEIGHNER:
For the same reason. And I'd like that 
THE COURT:
 It's sustained at that point.
MR. STEIGHNER:
Your Honor, may I ask an admonition to the jury to ignore that speculation?
THE COURT:
You will please disregard any statement as to whether the Defendant had keys to this apartment as an expression of this witness's opinion. You will please disregard that. Now, is there any one of you who will not disregard that? If so, raise your hand.
Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. Smith v. State, 198 So.2d 220, 223 (Miss. 1967); Buchanan v. State, 204 Miss. 304, 37 So.2d 318 (1948). It is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of jurors. Forrest v. State, 352 So.2d 1328 (Miss. 1977); Herron v. State, 287 So.2d 759 (Miss. 1974); Myrick v. State, 290 So.2d 259 (Miss. 1974). The jury is presumed to have followed the directions of the trial judge. Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Hughes v. State, 376 So.2d 1349 (Miss. 1979); Gray v. State, 375 So.2d 994 (Miss. 1979); Duke v. State, 340 So.2d 727 (Miss. 1976).
We held in Schwarzauer v. State, 339 So.2d 980, 982 (Miss. 1976), "trial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued." We further stated, "We recognize that the fair and orderly administration of justice requires that trial judges must have reasonable discretion in dealing with errant jurors who demonstrate their unwillingness to abide by the instructions of the court, or other unanticipated occurrences which transpire during trials." Id.
The question that must be asked to determine whether or not this assignment has merit is "were the comments made by Dowdle (in reference to Vickery having discarded the keys) so damaging that an admonishment could not cure the prejudicial affect the comments would have on the jury?" We find that they were so damaging that any efforts to persuade the jury to disregard them would be futile.
Based upon a clear violation of Vickery's state and federal constitutional rights to a speedy trial and based upon Vickery's statutory right to be tried within 270 days, we reverse and order the appellant discharged.
REVERSED, RENDERED AND APPELLANT DISCHARGED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ., concur.
PRATHER, J., dissents with Separate Written Opinion Joined by DAN M. LEE, P.J., and ANDERSON and GRIFFIN, JJ.
PRATHER, Justice, dissenting:
Respectfully, I dissent from the majority view on the central issue of whether a fugitive from justice, incarcerated in another state, who had to be extradited from the State of Georgia through lengthy executive procedure, can claim denial of a speedy trial. It is my position that the defendant cannot claim trial delay since she caused the delay and the state was diligent in seeking formal extradition.
Because certain facts are not covered in the majority opinion, I am compelled to add testimony that I consider significant to resolution of these issues.
Pat Vickery, alias Pat Williams, rented Apartment No. 119 at Rivergate Apartments on December 28, 1982, from the assistant manager, Rae Ann Graham, by signing a rental application as "Pat Williams" and paying her rental money. A receipt for "Pat Williams" payment was *1381 issued by "M. Davis," the manager. The assistant manager positively identified in court this defendant as the person who rented the apartment. About ten days later, Pat "Williams" asked Mr. Graham about adding a deadbolt lock to her apartment and was informed that such was permissible if a key was given to the management for entry into the apartment for maintenance purposes. Pat "Williams" was described by Ms. Graham as mad about this requirement.
Additionally, Pat "Williams" made a membership application for electricity for apartment No. 119, Rivergate, but the management there could not identify the applicant at the time of trial.
In late January, 1983, Rae Ann Graham was served with a search warrant to search apartment No. 119 since no occupant answered the door. Ms. Graham was unable to unlock the door with her master key and observed that the exterior door lock had been changed. Observation of the windows revealed that clamps had been positioned to prevent entry through a window. As a window contained a cracked piece of glass, Graham told the officers to break the glass for entry which was done. When the one exterior door was opened from the interior, the search of the apartment revealed the following contents: 142 pounds of marijuana, scales, plastic bags, a plastic hot sealer, a glove, papers, women's clothing and toiletries, and men's clothing. Additionally, an interior bedroom door had a lock added; the inside door required breaking to gain entry. The air conditioning vents in the apartment had been covered with duct tape. Fingerprints were taken of the contents before removal.
The apartment maintenance man testified to seeing a man and woman at the apartment, but was unable to identify the woman. However, he did recall a previous tenant at the apartment complex named "Gary Hall" who had "skipped" out. (Gary Hall was a companion of this defendant and was living with him at a house in Columbus at another location which was also searched this same date.)
After being indicted by the Lowndes County Grand Jury and arrested for possession of illegal substances, Pat Vickery, alias Pat Williams, made bail bond in the amount of $25,000.00 with a bonding company, Delta Bonding Company, and left the state. She testified to having stayed in Kentucky and Florida before going to Georgia. In Georgia, she and Gary Hall were arrested for violation of Georgia Controlled Substances Act. Patricia Vickery was tried and convicted on October 22, 1984, which conviction she appealed to the Georgia Supreme Court.
The following chronology of events that occurred in the Lowndes County Circuit Court proceedings after her release under bond follows:
CHRONOLOGY OF EVENTS
2/18/83 Indictment of Pat Vickery alias Pat Williams, No. 7920, Possession of marijuana; No. 7921 possession of cocaine.
2/21/83 Indictment delivered  Pled not guilty. $25,000.00 Bail bond
2/22/83 Defendant's motion for continuance, granted February, 1983 Term
5/26/83 Defendant's motion for continuance, granted May, 1983 Term
8/19/83 Defendant's motion for continuance, granted August, 1983 Term to next term
12/9/83 Court order continuing case "for good cause" with 50 other cases  November Term, '83
3/2/84 Court order continuing case "for good cause" with 126 other cases  February Term, 1984
5/1/84 Court order continuing case "for good cause" with 67 other cases, May Term, 1984
8/27/84 Defendant's motion for continuance, granted August Term
8/29/84 Motion for alias capias issuance for Pat Vickery alias Pat Williams for reason that defendant's bonding company, Delta Bonding Co., on $25,000.00 bond was now defunct and bond was worthless.

*1382 8/29/84 Alias capias issued for Pat Vickery alias Pat Williams
10/22/84 Georgia conviction of Patricia Vickery
11/30/84 Application of District Attorney to Gov. Allain that a requisition for Pat Vickery from Department of Offender Rehabilitation, Columbia County Jail, Martinez, Georgia be issued. Affidavit alleges Pat Vickery to be a fugitive from Mississippi since "on or about January 17, 1983"
The following is from testimony of State Investigator Harry Alderson
3/?/1984 Pat Vickery appeared before March Term 1984 in Georgia
11/20/84 Pat Vickery was sentenced to 5 years term to serve and 5 years on probation for possession of 82 lbs of marijuana in Georgia.
2/__/85 Pat Vickery had appealed conviction and Mississippi could not get her until appeal was heard by the Georgia Supreme Court.
8/__/85 Appeal still pending
1/30/86 Circuit judge's order to transport Vickery to Mississippi
2/__/86 Pat Vickery was contesting extradition to Mississippi
2/7/86 D.A.'s office advised that Vickery could be brought to Mississippi
2/__/86 D.A.'s motion for order requiring hair, blood, and handwriting analysis (February Term)
2/28/86 State's motion for continuance to have crime lab analysis of hair, blood, and handwriting samples. Order granted.
5/21/86 State submits discovery to defendant
5/28/86 Defendant's motion for continuance
(Case set for trial on August 25, 1986)
8/22/86 State's motion for continuance to a later day during term to permit State Crime Lab witnesses to be available for testimony. The necessary witnesses were already under subpoena to appear in another court on August 25.
8/22/86 Order continuing trial from August 25 to August 28
8/28/86 Defendant's motion to dismiss based upon constitutional right to speedy trial. The motion attributes the unjustified delays to the State.
It was on the date of November 30, 1984 that the District Attorney, John Montgomery, filed an affidavit with Governor Bill Allain applying for requisition of this defendant as a fugitive from justice from this state. The sworn affidavit alleged the defendant to be an inmate with the Department of Offender Rehabilitation in the Columbia County Jail, Martinez, Georgia. Certainly, the District Attorney was diligent in promptly pursuing extradition within a month of conviction. It was this effort by the State that ultimately secured the return of Patricia Vickery, alias Pat Williams. Having begun these extradition proceedings, the State was rebuffed by the Georgia requirements until Vickery's appeal was finalized, but this delay should not be charged against the State of Mississippi.
It is of significance to note the manner in which the speedy trial issue was raised in this case. After setting this case for trial at the August, 1986 term of court, the state and defense counsel were in court on August 22 for a rescheduling of the trial date to accommodate the State Crime Laboratory expert witnesses. No issue was raised at that time of the speedy trial question. On August 28 the defense counsel filed the motion to dismiss on speedy trial grounds under Miss. Code Ann. § 99-17-1 (Supp. 1987), the 270 day rule. Even at the preceding May, 1986 term of court the defendant was seeking a continuance. On the morning of trial, the defense filed the motion to dismiss for the first time, and the jury was selected before the hearing was had on this motion. The assistant district attorney informed the court of the disadvantage to the state in responding to a motion only filed on the date of trial. He expressed need of witnesses from Georgia to support his position. However, the trial judge made the following factual finding:
Upon an examination of the record itself in this case, the court file, it is completely obvious that the 270-day period has not run... . The continuances in the *1383 record except for one were granted at the request of counsel for the defendant. There has been one request for a continuance by the district attorney, and it is well within the 270 days. The defendant continued this case from term to term to term to term until it is not possible for the 270 days to have run. That's why I was examining this file is [sic] what I was looking at.

II.
Regarding the speedy trial issue, the defense relied upon the statutory 270 day rule, Miss. Code Ann. § 99-17-1, in the trial court hearing. Upon appeal, the defense relies upon the constitutional guarantee of a right to speedy trial. Analysis on both grounds is necessary.
Based upon the additional facts outlined in this dissenting opinion, I disagree with the analysis of the majority opinion on the speedy trial issue in two respects: (1) the 270 day rule of Miss. Code Ann. § 99-17-1 was not violated, nor was the constitutional guarantee to a speedy trial, and (2) the result conflicts with recent court decisions.

A.

Statutory Grounds
The State has the burden for bringing a defendant to trial in a timely manner. When there has been an unreasonable delay, the State has to prove that the delay in trial was reasonable and necessary.
Admittedly, a delay is present in this case. However, the record shows that the defendant sought all the continuances from the date of arrest in February, 1983 through December 9, 1983; all this delay must be attributed to the defendant.
From December 9, 1983 to August 27, 1984, the court ordered a continuance "for good cause." Although the order doesn't recite the cause, the record shows both a heavy court docket and the incarceration of the defendant in Georgia from March, 1984, as well as the assertion that she is a fugitive from justice.
In Fisher v. State, 532 So.2d 992 (Miss. 1988), citing Nations v. State, 481 So.2d 760 (Miss. 1985), held that a circuit judge's written order of continuance was "the equivalent of a judicial determination that good cause existed for granting that continuance which would toll the 270 day time limitation. Additionally in this case is the trial judge's finding that only one continuance was asked by the State, but that the defendant asked for continuances "from term to term to term to term." Conceding for the sake of argument, but without admitting, that this delay is charged to the State for lack of a stated reason in the order, this delay period runs 261 days. From August 27, 1984 the defendant again seeks a continuance. On November 30, 1984, the State began extradition proceedings.
I submit that the running of the 270 day statute is tolled against the State with the prompt filing of extradition papers in November, 1984. The State acted promptly and diligently and exercised good faith as soon as it had knowledge that Georgia had the defendant in custody. That the extradition proceedings were time consuming and were met with procedural delays in Georgia should not be charged against the State. Again, the majority opinion is contrary to our recent opinion of Hughey v. State, 512 So.2d 4 (Miss. 1987). In Hughey, supra, this Court held that a delay of some twenty (20) months in time consuming extradition procedures to secure a defendant incarcerated in another state fulfilled the State's duty to make a diligent good faith effort. On the contrary, the majority opinion today holds that a month's delay in beginning extradition is unreasonable.
Additionally, I find no support in the record for the majority's statement "that the State did not even take the necessary actions to have Vickery transferred from Georgia back to Mississippi until January 30, 1986." On the contrary, an affidavit of the district attorney of November 9, 1984, addressed to Mississippi's governor began a procedure that ultimately resulted in notification on January 30, 1986, of Vickery's availability for transfer to Mississippi in February, 1985.

*1384 B.

Constitutional Grounds
Without repeating the Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), guidelines for review of a constitutional speedy trial issue, I respectfully disagree with the majority analysis. (1) Length of delay. Having previously discussed the length of delay, the factor must weigh against the State as stated in Subsection A. (2) Reason for the delay. However, the reason for the delay was reasonable and the State's efforts in securing extradition were diligent as outlined in Subsection A and must weigh against the defendant. (3) The defendant's assertion of her right. The defendant never asserted her right and waited until the morning of trial to even file the motion to dismiss. This tardy filing prejudiced the State in meeting its proof on the facts. This factor weighs against the defendant. (4) Prejudice to the defendant. The majority opinion cites as prejudice to the defendant an assault against her in the jail by a female inmate in Lowndes County. However, there was medical treatment, not hospitalization, afforded to her. The hospitalization, nervous breakdown, and incident in which a prison guard pointed a handgun loaded with blank shells and shot at her were incidents that happened in the Georgia prison, not in Mississippi. Surely, these facts could not weigh against the State of Mississippi. The last facts cited by the majority suggest that the defendant is prejudiced when the State's witnesses could not identify her. I suggest that the failure of the State's witnesses to identify her could in no way prejudice the defendant; it certainly serves her advantage.
In summary, the Barker test weighs against the defendant, not the State, and I would hold that there is no violation of the speedy trial issue on either statutory or constitutional grounds.

III.
My dissent cannot end without reference to the other assignments of error.
(2) The introduction into evidence of contents of Apartment 119 is challenged on search warrant grounds. The search warrant issue was resolved against this defendant and her friend, Gary Hall, at trial. The issue was appealed to this Court and affirmed in Hall v. State, 455 So.2d 1303 (Miss. 1984). The assignment is without merit.
(3) The State's proof of the defendant's dominion and control of Apartment 119 was as follows: the apartment assistant manager positively identified Pat Vickery, alias Pat Williams, as the renter who contracted with her to rent Apartment 119. Vickery was the one positively identified who asked her about putting deadbolt locks on the door. The electrical deposit was in "Pat Williams'" name, although the manager couldn't identify the defendant. The majority opinion does correctly state the stipulations of the State's attorney as to what could not be proved by the handwriting expert, the blood samples, and the hair sample.
However, the testimony of Ron Smith, Fingerprint Examiner, Mississippi Crime Laboratory, at page 366 of the record testified as follows:
I determined that the two latent fingerprints of value which I developed on the paper items in State's Exhibit Number 13 were made by the same finger which made the inked fingerprints appearing in the left thumb block of what's been marked State's exhibit  I believe this is Number 7  bearing the name Patricia Vickery. Both are positive identifications. As for the latent fingerprints of value which I developed on the plastic bag containing State's Exhibit Number 12, I determined that it was made by the same finger which made the inked fingerprint appearing in the left index fingerprint block of State's Exhibit Number 7, the fingerprint card bearing the name Patricia Vickery. It, too, is a positive identification.
Smith also testified that he was only able to lift five latent fingerprints from all of the evidence from Apartment 119 and that three of the five prints were of Patricia *1385 Vickery. The other two prints were not identified by the examiner.
I am of the opinion that the State's proof was sufficient to show that Patricia Vickery had dominion and control over the apartment in question and was sufficient to support the jury's finding. I can see no other person in this scenario that could have been in control but Patricia Vickery, alias Pat Williams.
(4) As to the last assignment concerning alleged prejudicial comments made before the jury, I find no error. The objection of the defense was sustained by the court and the jury instructed to disregard it. It is presumed that the jury would follow the court's instruction.
I would affirm the conviction.
DAN M. LEE, P.J., and ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] With all respect to those who dissent, I feel compelled to clarify the record as it pertains to the chronology. The dissenting opinion contains only a partial chronology of the events which constitute the delay suffered by Patricia Vickery and which amounted to the denial of Vickery's federal and state constitutional rights to a speedy trial and which violates Miss. Code Ann. § 99-17-1 (Supp. 1981). Noted in the chronology of the dissent are three continuances ordered by the trial court. In reality there were eight such continuances. Five continuances ordered by the trial court, but not included in the dissent's chronology occurred on the following dates:

12/6/84 order continued case until next term of court beginning the second Monday in February.
3/1/85 order continued case until next term of court beginning on the second Monday of May.
5/31/85 order continued case until next term of court beginning on the third Monday in August.
9/6/85 order continued case until next term of court beginning on the second Monday in November.
12/6/85 order continued case until next term of court beginning on the second Monday in February.
To list only a partial chronology, as is done in the dissent, has the effect of minimizing the true amount of delay caused by the State and these delays alone amounted to 347 days.