614 So.2d 965 (1993)
Larry P. JACKSON
v.
STATE of Mississippi.
No. 90-KA-0454.
Supreme Court of Mississippi.
February 25, 1993.
*967 Irene Mikell Buckley, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and ROBERTS and SMITH, JJ.
SMITH, Justice, for the court:
Larry P. Jackson was indicted, tried and convicted in the Circuit Court of Washington County, Mississippi, for the crime of conspiracy pursuant to Miss. Code Ann. § 97-1-1, and seven counts of house burglary pursuant to Miss. Code Ann. § 91-17-19 (1972), and as an habitual offender pursuant to Miss. Code Ann. § 99-19-81. Although originally indicted on nine counts of house burglary, Jackson was found guilty by the jury on seven counts and acquitted on two others. The trial judge sentenced Jackson as an habitual offender to serve twenty-five years without parole in the custody of the Mississippi Department of Corrections. Jackson's counsel, Stan Perkins, filed for a J.N.O.V. or, in the alternative, a new trial on October 31, 1988. The September term of Circuit Court ended on Saturday, October 29, 1988.
Jackson, pro se, filed a motion for an out of time appeal and for appointment of counsel. The motions were granted and the trial judge ordered the Washington County Public Defender to file all necessary motions. The Public Defender, however, was relieved for cause and the original trial counsel, Stan Perkins, filed another motion for J.N.O.V. or, in the alternative, a new trial, which was overruled. Aggrieved, Jackson appeals, assigning the following errors:
I. THE LOWER COURT COMMITTED REVERSIBLE ERROR IN FAILING TO DISMISS THE CHARGES AGAINST JACKSON SINCE HIS RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
II. LARRY JACKSON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE RIGHTS SECURED HIM BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.
III. THE EVIDENCE PRESENTED AGAINST LARRY JACKSON WAS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTIONS OF CONSPIRACY AND HOUSE BURGLARY.
IV. THE VERDICT RENDERED AGAINST LARRY JACKSON IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding Jackson's assignments of error to be devoid of any merit and no error by the lower court, we affirm.

FACTS
During the fall months of 1987, many homes were burglarized in Washington County, Mississippi. Sheriff Eugene Parker of Franklin Parish, Louisiana, who testified in this case, received information that someone was selling a large number of guns in his area. He obtained one of the guns from Wayne Turbeville and determined it to have been stolen from a home in Greenville, Mississippi. Turbeville told Sheriff Parker that he had bought several guns from Larry Jackson and Donald Brister. Sheriff Parker testified that he recovered approximately 42 guns from Turbeville and immediately contacted the sheriff's office in Washington County, Mississippi, where Captain Chuck Haynes and the Sheriff of Washington County identified the guns by description and serial numbers.
*968 Jackson, Brister and Vickie Elliott lived in a mobile home with William Dukes in Florence, Rankin County, Mississippi. A search of the trailer revealed jewelry, a jewelry box, a coon hunting light, a radio and some guns that were all stolen from homes in Washington County. Brister gave a statement after his arrest. Captain Haynes, at Brister's request, drove him around the Greenville area and Brister pointed out the homes that he and Jackson had burglarized.
A warrant was issued for Jackson and he was arrested December 8, 1987, in Winnsboro, Louisiana. He executed a waiver of extradition and was transported to Hinds County, Mississippi on charges of burglary in Hinds County, totally unrelated to the burglary charges in Washington County. On January 11, 1988, the Hinds County charges were dismissed.
On January 15, 1988, Jackson was indicted on the Washington County charges. Jackson was moved from Hinds County to Washington County on February 1, 1988, arraigned February 3, 1988, and he plead not guilty to all counts. On March 9, 1988, Jackson filed a demand for trial.
Jackson's trial began October 17, 1988, and lasted two days. Jackson was sentenced on October 18, 1988, as an habitual offender. Jackson, aggrieved, appeals his conviction to this Court.

DISCUSSION

I.
Jackson contends the lower court erred in failing to dismiss the charges against him since his right to a speedy trial was violated.
Jackson requested that the lower court dismiss all charges for lack of a speedy trial, arguing that the constitutional right to a speedy trial attached at the "time of formal indictment or information or else restraints imposed by arrest and holding to answer criminal charge." Relying on Perry v. State, 419 So.2d 194 (Miss. 1982), Jackson argues that the 270-day period began running on December 8, 1987, the date of his arrest. The motion was overruled by the trial judge. Jackson complains this was reversible error.
The right to a speedy trial pursuant to Miss. Code Ann. § 99-17-1 (Supp. 1992) does not attach until arraignment:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
The trial was conducted exactly 257 days after arraignment. Accordingly, the statute is inapplicable to this situation, and Jackson must rely on constitutional grounds.
The State contends that Jackson has failed to allege a constitutional speedy trial violation before this Court. Jackson's counsel on appeal contends, "the Constitution is clear. One is entitled to go before a judge as quickly as possible and reasonable after one is physically being restrained under arrest." Defense counsel also cites Perry wherein this Court's decision was based on constitutional grounds because the State had complied with § 99-17-1 of Miss. Code Ann. (Supp. 1992). Jackson's constitutional right to a speedy trial is properly before this Court.
The right to a speedy trial for constitutional purposes attached at "time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986). See also Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988). This Court, in Smith v. State, 550 So.2d 406, 408 (Miss. 1989), held that for constitutional purposes, the right to a speedy trial attached at arrest. "Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether the constitutional right to a speedy trial has been denied." Handley v. *969 State, 574 So.2d 671, 674 (Miss. 1990). See also Vickery, 535 So.2d at 1376.
Barker factors are weighed and balanced in each case according to its facts. The factors that must be considered are (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. No single factor alone is dispositive. Jaco v. State, 574 So.2d 625, 630 (Miss. 1990).

1. LENGTH OF DELAY
This Court has held that an eight month delay is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss. 1989).
Jackson contends that the length of delay should be measured from December 2, 1987, the date of the issuance of the warrant for his arrest. He was not arrested until December 8, 1987. The date of his actual arrest is the beginning point. Lightsey, 493 So.2d at 378.
After his arrest and waiver of extradition, Jackson was taken to Hinds County jail on charges of burglary in Hinds County totally unrelated to the Washington County charges. On January 11, 1988, the Hinds County charges were dismissed. The State argues that the time Jackson was being held by Hinds County on completely unrelated charges should not be counted.
Since there is no connection between the burglaries in Hinds County and those in Washington County, the period prior to January 11, 1988, should not be counted. The total length of delay beginning January 11, 1988, until trial on October 17, 1988, amounts to a total of 281 days. Regardless of whether the delay is calculated from December 8, 1987, or January 11, 1988, the length of delay is greater than eight months and is presumptively prejudicial. Smith, 550 So.2d at 408.
However, as noted in Barker, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The case at bar certainly fits the description as noted in Barker. Here we have a defendant convicted of a conspiracy charge and seven house burglaries, not an ordinary street criminal.

2. REASON FOR THE DELAY
The State does not provide a reason in the record for the delay. The State contends that this is not a typical case and further alleges the delay was reasonable because the case involves nine counts of burglary and one count of conspiracy. There is no evidence in the record to support that the delay was a deliberate attempt to delay the trial in order to hamper the defense. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

3. DEFENDANT'S ASSERTION OF RIGHT
It is the State that bears the burden of bringing the accused to trial in a speedy fashion. Perry, 419 So.2d at 199; Vickery, 535 So.2d at 1377. Jackson, on March 9, 1988, filed a demand for trial. This prong of the Barker test must essentially weigh in favor of the defendant as he has demanded a speedy trial. Jaco, 574 So.2d at 632.

4. PREJUDICE TO THE DEFENDANT
The final prong of the Barker analysis encompasses two dimensions. The first involves the actual prejudice resulting to the accused in defending his case. Jaco, 574 So.2d at 632; Perry, 419 So.2d at 200. The second involves interference with a defendant's liberty. Barker, 407 U.S. at 537, 92 S.Ct. at 2195, 33 L.Ed.2d at 120-21 (White, J., concurring). See also Moore v. Arizona, 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183, 186 (1973); Jaco, 574 So.2d at 632-33; Trotter v. State, 554 So.2d 313, 318 (Miss. 1989).
Jackson sets out five separate ways in which he believes the delay prejudiced him. He states that he was held practically incommunicado for two months after his arrest in Louisiana. We find no evidence that Jackson's incarceration was practically incommunicado. This is a mere allegation, totally unsupported by the evidence. Furthermore, most of the two months which Jackson complains of was spent in the *970 Hinds County Jail in Hinds County, Mississippi, on charges totally unrelated to those in Washington County.
Secondly, Jackson states that he was never afforded his initial appearance before a magistrate, never informed of the charges against him, his constitutional rights, his right to a preliminary hearing, or of his right to reasonable bail. We hold these to be mere unproven allegations, totally unsupported by the record, and not the result of the delay in Jackson's trial.
Thirdly, Jackson contends that he was prejudiced by never having an opportunity to confer with counsel regarding the charges against him. We hold that this is another mere allegation, totally unsupported by the evidence as Jackson did not set forth what investigation had to be foregone because of the delay.
Jackson contends that the delay caused him to suffer the loss of opportunity to locate witnesses essential for his defense. Jackson again fails to identify any witnesses he was unable to locate or how the testimony of such witnesses would have affected his defense. We find no merit to this allegation as the record totally fails to support Jackson's position.
Finally, Jackson complains that, during his incarceration, the State was able to develop a better case against him by discussing the facts with Donald Brister. We find that this allegation has nothing to do with Jackson's speedy trial claim. Jackson's claims under the fourth prong of the Barker test are totally unsubstantiated and without merit.
This Court, considering the factors of Barker, finds Jackson's right to a speedy trial was not violated. The length of the delay was presumptively prejudicial; however, this case involved nine counts of burglary and one count of conspiracy and certainly met the criteria under Barker of being much more than an ordinary street crime and was rather clearly a complex serious case. The delay in the case at bar appears to be reasonable and not unduly lengthy. We must hold the delay was reasonable under the circumstances. Jackson's failure to substantiate any of his claims certainly lends less weight to this factor of prejudice. Jackson's demand for a speedy trial in assertion of this right, by proper motion, is the only factor that weighs in his favor. This assignment of error by Jackson does not constitute reversible error and is without merit.

II.
Jackson contends that his trial counsel failed to object to leading questions about the homes that were burglarized. Once Elliott and Brister testified that Jackson participated in the Washington County burglaries, the prosecutor described the particular homes and asked Elliott and Brister if they remembered them. Neither Elliott nor Brister remembered Richard Fulford's home under count two and Jackson was found not guilty with respect to count two. Elliott could not remember burglarizing the home of Bill Gafford, count three. Jackson was found not guilty as to count three. Both Elliott and Brister remembered the other seven (7) homes as set out in the indictments and Jackson was found guilty of burglary with respect to these homes, counts four through ten. He was also found guilty of conspiracy, count one.
In Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985), this Court stated:
The legal test as to effective assistance of counsel was recently established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where the United States Supreme Court held that on a claim of ineffective assistance of counsel the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at [686], 104 S.Ct. at 2064, 80 L.Ed.2d at 692-93. This is because counsel plays a critical role in assuring that the adversarial system does produce a just result.
The burden of proving ineffective assistance of counsel is on the defendant to show that the counsel's performance was *971 (1) deficient, and that (2) the deficient performance prejudiced the defense. If the defendant fails to prove either component then reversal of a conviction or sentence is not warranted. 466 U.S. at [686], 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
The defendant is required to specify the acts or omissions that are alleged to be the result of unreasonable legal assistance.
In assessing whether or not a defendant received a fair trial or whether a fair trial was undermined by counsel's errors: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 466 U.S. at [693], 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
In assessing whether counsel's performance was deficient the standard of performance is that of "reasonably effective assistance." 466 U.S. at [686], 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This continues to be reasonableness under prevailing professional norms and reasonableness considering all the circumstances.
See also Cabello v. State, 524 So.2d 313, 315 (Miss. 1988).
In the case at bar, the various homeowners testified to the burglaries on the dates in question and identified certain items stolen from their homes. Both Elliott and Brister identified Jackson as having participated in the burglaries of the specific homes in the indictment. In order to connect Jackson to the specific burglaries set out in the indictment, the witnesses had to specifically identify the homes that were listed in the indictment. During Brister's testimony, the prosecutor had to describe the homes on several occasions, and also had to tell Brister what was taken from the homes; however, Elliott could remember all the homes simply by having the prosecutor state the name of the home-owner and give a short description of the homes, except for the two homes covered in counts two and three upon which the jury acquitted Jackson.
This Court addressed a similar issue in Irving v. State, 441 So.2d 846 (Miss. 1983), cert denied, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985), and overruled on other grounds by Willie v. State, 585 So.2d 660, 681 (Miss. 1991), where the appellant alleged he was denied effective assistance of counsel because his trial counsel failed to object to leading questions. This Court held:
As to the leading questions, the same testimony could have been elicited by simple rephrasing of the questions. Therefore it cannot be said that Irving suffered any actual or substantial disadvantage because of the failure to object.
Irving, 441 So.2d at 856 [emphasis added]. But see Stewart v. State, 229 So.2d 53 (Miss. 1969). We find no merit to this argument of ineffective assistance of counsel under this issue as, likewise, in Irving, the questions asked by the prosecutor could have been rephrased.
Jackson also contends he was denied effective assistance of counsel because his counsel failed to perfect a timely appeal.[1] This allegation involved post-trial matters. Jackson was afforded a hearing whereupon the trial court determined that the appeal was not filed due to a dispute over legal fees with Jackson's trial counsel, Stan Perkins. The trial court appointed the public defender of Washington County and subsequently, removed said public defender whereupon Jackson's original trial counsel, Stan Perkins, ultimately filed for a new trial and J.N.O.V., thereby protecting Jackson's right of appeal to this Court. We find this assignment of error to be without merit.

*972 III.
Jackson contends that the only evidence connecting him with the actual burglaries was obtained through the suggestive, leading and improper testimony of Brister and Elliott and that such evidence presented is wholly insufficient to support the verdict of the jury. Jackson further contends that Brister's and Elliott's testimony was biased because of certain deals received from the State. Finally, Jackson points out that Brister's testimony conflicted with Elliott's and also with Turbeville's.
Addressing the issue of sufficiency of the evidence requires a review of the evidence to determine whether or not a reasonable, hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. The evidence favorable to the State is accepted as true, and the State is given the benefit of all reasonable inferences flowing from that evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). See also Harveston v. State, 493 So.2d 365 (Miss. 1986).
The issue of credibility was developed before this trial jury, including the nature of the deals between the witnesses and the State. The jury is charged with the duty of judging credibility. Harris v. State, 527 So.2d 647, 649 (Miss. 1988); Groseclose, 440 So.2d at 300. Furthermore, minor conflicts in testimony are not unusual. Young v. State, 420 So.2d 1055, 1057 (Miss. 1982).
We find sufficient evidence from which a reasonable, hypothetical juror could find beyond a reasonable doubt the defendant guilty. Appellant's assignment of error is without merit.

IV.
Once again, Jackson argues that his convictions are the result of conflicting testimony obtained through leading questions. In Groseclose, this Court stated:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
Groseclose, 440 So.2d at 300. Furthermore, in Gandy v. State, 373 So.2d 1042 (Miss. 1979), this Court held:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Id. at 1045.
The witnesses for the State obviously presented a believable and credible story of Jackson's involvement in the alleged house burglary and conspiracy. This is a classic case of conflicting evidence presented to a jury on factual dispute and the jury obviously resolved the credibility issues against Jackson.
Having fully examined this assignment of error by Jackson, we find it to be without merit.

CONCLUSION
After thorough examination and for reasons stated above, we hold that Jackson's right to a speedy trial was not violated; he failed to prove that he was denied effective assistance of counsel; and the verdict was supported by sufficient evidence and was not against the overwhelming weight of the evidence. Jackson's conviction of conspiracy and seven (7) counts of house burglary and sentence of twenty-five (25) *973 years in the custody of the Mississippi Department of Corrections as an habitual offender, without possibility of parole, is hereby affirmed.
COUNT 1: CONVICTION OF CONSPIRACY TO COMMIT BURGLARY AND SENTENCE OF FIVE (5) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 4: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONSECUTIVE WITH COUNT 1, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 5: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONSECUTIVE WITH COUNTS 1 AND 4, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 6: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONCURRENT WITH COUNTS 1, 4 AND 5, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 7: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONCURRENT WITH COUNTS 1, 4, 5 AND 6, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 8: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONCURRENT WITH COUNTS 1, 4, 5, 6 AND 7, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 9: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONCURRENT WITH COUNTS 1, 4, 5, 6, 7 AND 8, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT 10: CONVICTION OF HOUSE BURGLARY AND SENTENCE OF TEN (10) YEARS, AS AN HABITUAL OFFENDER, WITHOUT PAROLE, CONCURRENT WITH COUNTS 1, 4, 5, 6, 7, 8 AND 9, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS, C.J., and DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE and ROBERTS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] Attached to Jackson's brief is a letter sent to his appellate counsel listing several additional allegations regarding ineffective assistance of counsel. Jackson stated that he wanted these items included in his brief. Appellate counsel did not address these matters other than to note that the list was attached to Appellant's brief. Since the issues listed were not argued, they are deemed abandoned. Johnson v. State, 154 Miss. 512, 513, 122 So. 529, 529 (1929). See also Estes v. State, 533 So.2d 437, 440 (Miss. 1988); Pate v. State, 419 So.2d 1324, 1325-26 (Miss. 1982).