755 So.2d 1276 (2000)
Sherman L. MOORE a/k/a Sherman Lamorris Moore, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01549-COA.
Court of Appeals of Mississippi.
February 15, 2000.
*1277 David L. Walker, Southaven, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
EN BANC.
MOORE, J., for the Court:
¶ 1. A Tate County grand jury indicted Sherman Moore on one count of conspiracy, *1278 three counts of grand larceny, and two counts of burglary of a building other than a dwelling. Following a trial, the jury found Moore guilty on all counts. The circuit court sentenced Moore to a total of thirty-four years in the custody of the Mississippi Department of Corrections, the last twelve years suspended, with this sentence to run consecutively to Moore's sentence on a prior conviction.
¶ 2. Aggrieved by the verdict, Moore presents five issues for our review and resolution:
I. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS THE SEIZURE OF HIS TENNIS SHOES BY JAIL OFFICER LEE JONES IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 23 OF THE MISSISSIPPI CONSTITUTION.
II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL FOLLOWING CO-DEFENDANT'S TESTIMONY THAT THE APPELLANT HAD COMMITTED BANK ROBBERY, IN VIOLATION OF MISSISSIPPI RULE OF EVIDENCE 404(b).
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE APPELLANT'S OBJECTION BASED ON DUE PRECESS AND FUNDAMENTAL FAIRNESS STATE AND FEDERAL RIGHTS TO TROY MOSLEY'S INCOURT IDENTIFICATION OF KEITH POWERS.
IV. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO JOE ANDREWS'S TESTIMONY CONCERNING THE POSSIBILITY OF THE APPELLANT'S TENNIS SHOES MAKING AN IMPRESSION ON A SIGN BASED UPON MISSISSIPPI RULES OF EVIDENCE 702 AND 703.
V. WHETHER THE VERDICT OF THE JURY OF GUILTY ON ALL COUNTS WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding merit in appellant's fifth assignment of error, this Court reverses and remands.

FACTS
¶ 3. Appellant Sherman Moore was arrested on December 25, 1996, after codefendants Keith Powers and Derrick McAdory stated to police that he had participated in their crime spree that took place on December 23-24, 1996. Although Powers and McAdory rendered their statements separately, their accounts of the crimes were substantially similar. Both confessed to the police their involvement in the following crimes that took place on December 23-24, 1996: the theft of two automobiles from a used car business in Senatobia, Mississippi, as well as damaging two other automobiles at that same business, the burglary of another used car business in Senatobia, the burglary of a men's clothing store also in Senatobia, and the theft of three more automobiles from a car dealership in Batesville, Mississippi.
¶ 4. In their respective confessions, both Powers and McAdory alleged that appellant Moore had participated with them in the commission of those crimes. However, upon being called as witnesses for the State during Moore's trial, both testified contrary to their confessions made to the police. Both Powers and McAdory testified that Moore was not involved in the commission of any of the crimes.
¶ 5. Of the evidence offered by the State, only three items came close to connecting Moore to the crime spree of Powers and McAdory. The first item was the written confession of Powers, wherein he stated that Moore was an active participant in the *1279 various crimes. However, this statement was offered solely for impeachment purposes when, contrary to his prior statements, Powers testified that Moore was not involved. The second item of evidence was the written confession of McAdory, who also stated that Moore was an active participant in the various crimes. Like the written confession of Powers, McAdory's written confession was introduced solely for impeachment purposes, when he, like Powers, contrary to his prior written statement, testified that Moore was not involved.
¶ 6. The third item of evidence offered were the tennis shoes worn by Moore. A crime lab analyst testified that footprints found on a sign at one of the burglaries were similar to those made by the type of tennis shoes worn by Moore. The analyst indicated that the prints were consistent with the type of tennis shoes worn by Moore, but did not state they were made by the actual tennis shoes worn by Moore. Nor was he able to determine when the prints were made or under what circumstances.
¶ 7. Upon recanting their prior statements implicating Moore, Powers and McAdory testified that they had tried previously to trick the interviewing officer into believing that an adult had influenced them to commit these offenses. Powers testified that the interviewing officer suggested Moore's involvement. However, McAdory testified that he fabricated the story without suggestion from the interviewing officer.

WHETHER THE VERDICT OF THE JURY OF GUILTY ON ALL COUNTS WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

DISCUSSION
¶ 8. A prior inconsistent statement by a nonparty witness may only be admitted to impeach the credibility of that witness and may not be considered as substantive evidence. Moffett v. State, 456 So.2d 714, 719 (Miss.1984). Also, a party may only impeach its own witness after showing genuine surprise in response to the witness's testimony and establishing that the witness has become "unexpectedly hostile." Id. at 718. The prosecution never asserted that Powers's and McAdory's prior statements were admitted merely to impeach the witnesses' credibility even though the statements were offered into evidence after the witnesses disavowed Moore's participation. The record indicates no objection by the defense to the admission of the prior statements, and Moore does not raise this issue in his brief on appeal.[1]
¶ 9. Generally, Mississippi Rule of Appellate Procedure 28(a)(3) prohibits this Court's review of any issue not argued on appeal. However, M.R.A.P. 28(a)(3) provides an exception allowing that "the court may, at its option, notice a plain error not identified or distinctly specified." Similarly, Mississippi Rule of Evidence 103(d) authorizes a court to address "plain errors affecting substantial rights although they were not brought to the attention of the court." According to the Mississippi Supreme Court, the reviewing court may address issues as plain error "when the trial court has impacted upon a fundamental right of the defendant." Berry v. State, 728 So.2d 568, 571 (Miss.1999) (quoting Sanders v. State, 678 So.2d 663, 670 (Miss. 1996)). This plain error rule "reflects a policy to administer the law fairly and justly" and protects a party "when (1) he has failed to perfect his appeal and (2) when a substantial right is affected." M.R.E. 103(d), cmt.
¶ 10. Allowing the jury to consider Powers's and McAdory's prior inconsistent, *1280 out-of-court statements as substantive evidence of Moore's participation in the subject crime spree impacted Moore's fundamental right to a fair trial. To avoid this impact, the trial court could have instructed the jury regarding the limited application of the evidence, but the defense never requested such an instruction. The trial judge may instruct the jury upon applicable principles of law (1) at the request of a party, as provided by Miss.Code Ann. § 99-17-35 (Rev.1994), or (2) on the court's own motion as specified in URCCC 3.07. See Newell v. State, 308 So.2d 71, 78 (Miss.1975). The trial court has no affirmative duty to offer jury instructions sua sponte or to suggest instructions for the parties to consider. Giles v. State, 650 So.2d 846, 854 (Miss.1995).
¶ 11. The established standard of review provides that jury instructions "are read as a whole to determine if the jury was properly instructed." Boone v. Wal-Mart Stores, Inc., 680 So.2d 844, 845 (Miss.1996). If the instructions "do not fairly or adequately instruct the jury, [the appellate court] can and will reverse." Id. With no limiting instruction, a principle of law applicable to this case was not explained to the jury, and the jury was improperly allowed to consider the witnesses' prior statements as evidence of Moore's participation in the crimes charged. Consequently, the jury instructions were inadequate to render a fundamentally fair trial.
¶ 12. On appeal, Moore raised the issues of whether the evidence was sufficient to present a question for the jury and whether the verdict was against the overwhelming weight of the evidence. As to sufficiency, the trial judge denied Moore's requests for a directed verdict, a peremptory instruction, and a judgment notwithstanding the verdict. The trial judge also found that the verdict was not against the overwhelming weight of the evidence and denied Moore's motion for a new trial.
¶ 13. Upon review, the substantive evidence, without the prior inconsistent statements by Powers and McAdory, is significantly diminished. Moore's shoe could not be conclusively identified as the shoe which left a print on the sign at the scene of one burglary. Michelle Newsom, whom Moore claimed as his alibi, testified that she was not with Moore on the night in question. Troy Mosley, Moore's roommate, testified that he had seen a black and red bag like the one confiscated by police in the car owned by Moore's other roommate, Shannon Radfield.
¶ 14. Admittedly, this evidence is weak and alone may be insufficient to connect Moore to the crime spree. The jury, unaware that it could not consider the codefendants' written statements as substantive evidence against Moore, could have improperly credited the statements in finding Moore guilty. Reversal of a guilty verdict under such circumstances is appropriate. The reversal should be based upon the lower court's procedural error in allowing the written statements into evidence and upon the failure of the jury instructions to fairly and adequately instruct the jury to credit the prior inconsistent statements for impeachment purposes only; therefore, this case will be remanded for a new trial.
¶ 15. The distinction between the various grounds of reversal is important because remand of reversed cases may raise double jeopardy concerns. Reversals based upon a finding that the verdict is against the overwhelming weight of the evidence result in remand for new trial. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). Reversals due to trial error also result in remand. Burks v. United States, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Reversals based upon a finding that the evidence is insufficient to support the verdict, however, are not remanded but are rendered. Id. at 16, 98 S.Ct. 2141.
*1281 ¶ 16. In Burks, the court explained the double jeopardy concerns in remanding cases reversed due to trial error versus those reversed due to insufficient evidence. The court held:
[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.
Id. at 15, 98 S.Ct. 2141 (emphasis added). Conversely, where a case is reversed due to evidentiary insufficiency, the court ruled "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, [thus], the only `just' remedy available for that court is the direction of a judgment of acquittal." Id. at 18, 98 S.Ct. 2141.
¶ 17. The error that occurred in the present case was the trial court's receipt of Powers's and McAdory's written statements into evidence and the resulting inference that these could be considered as substantive evidence of Moore's guilt. Receipt of the statements as substantive evidence resulted in a fundamentally defective judicial process. Not only does Moore have a strong interest in receiving a fair readjudication of his guilt free from such error, but society has a valid concern for insuring Moore is punished if he is adjudicated guilty in an error-free trial.
¶ 18. The Burks court did not consider whether the appellate court should remand a case for a new trial where the incorrectly received evidence was the only evidence which would support a conviction. The United States Fifth Circuit Court of Appeals, in United States v. Sarmiento-Perez, 667 F.2d 1239 (5th Cir.1982), addressed this issue in the context of an improperly admitted prior inconsistent statement. Sarmiento-Perez was convicted of conspiring to possess cocaine with intent to distribute and of distributing cocaine. The Fifth Circuit reversed the conviction because the trial court erroneously admitted the written confession of a co-conspirator, which implicated Sarmiento-Perez, into evidence. The court remanded the case to the trial court, and Sarmiento-Perez moved for dismissal on double jeopardy grounds.
¶ 19. Sarmiento-Perez urged the Fifth Circuit to rule that, without the confession, the evidence at trial was insufficient to sustain his conviction. The court acknowledged that if it so ruled the double jeopardy clause would prohibit a retrial of Sarmiento-Perez. The court declined, however, to rule that the evidence sans the confession was insufficient to support the guilty verdict. The court instead ruled reversal was based upon the trial court's error in admitting the co-conspirator's written confession. Remand for new trial under these circumstances did not constitute double jeopardy because the double jeopardy clause does not prohibit a retrial of a defendant whose conviction was reversed for procedural errors. Id. at 1240.
¶ 20. The Sarmiento-Perez court noted it had reversed convictions in previous cases where inadmissable evidence was introduced and remanded for new trial, "even when the only evidence in the record on an essential element was that excluded. Such a reversal was considered a reversal for trial error." Id. (citing United States v. Williams, 661 F.2d 528 (5th Cir.1981)). The court reasoned: "Because we cannot *1282 know what evidence might have been offered if the evidence improperly admitted had been originally excluded by the trial judge, we have concluded that such situations do not present instances of evidentiary insufficiency. Accordingly, after reversal, the matters should be remanded for new trial." Id.
¶ 21. The Mississippi Supreme Court implicitly followed Sarmiento-Perez in Moffett v. State, 456 So.2d 714 (Miss.1984). Despite the Moffett court's acknowledgment that without the improperly admitted prior inconsistent statement "the State's case falls apart," the court remanded the case for a new trial. Id. at 720-21. While the court did not explain its decision to remand, instead of rendering a judgment of acquittal, it concluded that the error so "infected the proceedings below that Moffett has been denied a fair trial." Id. at 721.
¶ 22. As noted in Burks, error involving incorrect receipt of evidence merits reversal and remand because it results in a conviction due to a fundamentally defective judicial process. As noted in Sarmiento-Perez, admission of a co-conspirator's confession as substantive evidence constitutes trial error and remand is appropriate, even if the improperly admitted confession was the only evidence to support a guilty verdict. In Moffett, the Mississippi Supreme Court remanded, even though the prior inconsistent statement was the only evidence to support the guilty verdict.
¶ 23. In the present case, the admission of the confessions of the co-conspirators Powers and McAdory, as substantive evidence of Moore's guilt, is trial error and impacted Moore's fundamental right to a fair trial. Therefore, this Court reverses and remands for a new trial.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURRING WITH SEPARATE WRITTEN OPINION. KING, P.J., CONCURRING IN PART, DISSENTING IN PART WITH SEPARATE WRITTEN OPINION.
IRVING, J., concurring:
¶ 25. I believe existing case law mandates a reversal and remand of this case; therefore, I concur with the majority's conclusion in that respect. However, like Presiding Judge King, I believe the majority's discussion of the double jeopardy issue is not warranted by the record in this case as that issue was not raised by either party. I also believe it would be a waste of judicial resources for this case to be retried solely on the evidence before us, for if the State obtains a conviction on retrial on essentially the same evidence as is before us now, it would be difficult to see how such conviction could stand. But, because the State may be able to garner additional evidence sufficient to support a conviction of Moore, it should not be denied the opportunity to do so. I doubt the State has such evidence because nothing more was offered in this case. But, I cannot overlook the fact that the State's strategy, as well as its evidence, may have been different had it known in advance of the turnabout of its two star witnesses. For this reason, I would not reverse and render.
KING, P.J., CONCURRING IN PART, DISSENTING IN PART:
¶ 26. I agree with the majority that this case should be reversed. However, I differ with the path chosen to reach that decision, as well as the ultimate disposition of this matter.
¶ 27. The majority decides this case based on plain error, because of Defendant's *1283 failure to object to the prosecution's impeachment of its witnesses.
¶ 28. Under Rule 607, Mississippi Rules of Evidence, the prosecution had every right to impeach its witnesses. Where, the prosecutor lays a proper predicate for impeachment, there is no obligation on Defendant to object to that impeachment. Had Moore objected, his objection would in all likelihood have been overruled.
¶ 29. Moore's obligation was to request that the trial court exclude from substantive consideration impeachment evidence. He did this by his requests for a directed verdict and peremptory instruction.
¶ 30. As further justification for resolving this case upon the basis of plain error, the majority holds that the problem of improper evidence could have been resolved with a limiting instruction. This holding would appear to be inconsistent with the finding of the Supreme Court in Bruton v. United States, 391 U.S. 123, 129, 88 S.Ct. 1620, 20 L.Ed.2d 476(1968), "... that too often such admonition against misuse is intrinsically ineffective in that the effect of such a non-admissible declaration cannot be wiped from the brains of the jurors. The admonition therefore become a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell." Id.
¶ 31. Had the trial court excluded the improper evidence, the only remaining evidence to connect Moore to this offense would have been a print made by a shoe consistent with the tennis shoes worn by Moore. A print which could not be identified as coming from Moore's shoe. Nor could it be determined when and how the print was made.
¶ 32. Having determined that this case should be reversed, in the interest of judicial economy, I would also render.
¶ 33. The majority opinion provides a good discussion of double jeopardy as determined by the reversal of a case based on trial error or evidentiary insufficiency. While this is a good discussion, it is irrelevant to the present case. Indeed one notes with great interest, that it is only the majority opinion which inserts the issue of double jeopardy in this case.
¶ 34. Neither Moore nor the State has suggested, or hinted at, the existence of a double jeopardy question in this case. The double jeopardy question was raised for the first time by the majority opinion. Since the issue of double jeopardy is not raised by the parties, nor is it relevant to the resolution of this case, one must conclude that it is a really disingenuous effort to infer that this Court lacks the authority to render the ultimate decision in this case.
¶ 35. As a basis for this inference, the majority relies upon United States v. Sarmiento-Perez, 667 F.2d 1239 (5th Cir.1982) and Moffett v. State, 456 So.2d 714 (Miss. 1984). I find no such pronouncement or inference in either of these cases:
¶ 36. In Sarmiento-Perez, the sole issue before the Fifth Circuit was whether retrial was prohibited by double jeopardy. In a prior decision, the Fifth Circuit had reversed the conviction of Sarmiento-Perez, and remanded the case to the trial court. In the case relied upon by the majority, Sarmiento-Perez appealed subsequent to remand, and asked the Fifth Circuit to hold that re-trial was prohibited because of double jeopardy. In response to this appeal, the fifth Circuit held that the basis of its decision made double jeopardy considerations inapplicable.
¶ 37. The question of whether a re-trial is prohibited by considerations of double jeopardy is beyond a doubt not the same question as whether this Court has the authority to render a decision based upon considerations of judicial economy.
¶ 38. With respect to Moffett, the majority contradicts itself. On one hand it infers *1284 that remand is mandated by Moffett, while on the other hand it states, "the Court did not explain its decision to remand, instead of rendering a judgment of acquittal." If the Court failed to explain its reasons for remand rather than rendering, only a rather tortured bit of logic could find a mandate precluding rendering final judgment.
¶ 39. Because, I believe this Court has the authority to not merely reverse, but to also render, in the interest of judicial economy, I would reverse and render this case.
NOTES
[1] As the prior statements were received into evidence, the prosecution requested a bench conference which was not recorded. Consequently, we do not know whether the parties or the trial court addressed the evidentiary limitations on the prior statements during that conference.