863 So.2d 990 (2004)
George Randall HUNT, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01466-COA.
Court of Appeals of Mississippi.
January 6, 2004.
*991 Mark G. Williamson, Starkville, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. George Hunt was indicted and convicted on three counts of drug-related crimes. He has appealed the decision of the trial court to deny him a new trial. Hunt sought a new trial on the basis that the jury's verdict was against the weight of the evidence. He further complains that he is being subjected to multiple punishments for the same conduct in violation of the protections against double jeopardy afforded him under applicable constitutional principles. We find no merit in Hunt's challenge to the weight of the evidence. However, we conclude that at least a portion of Hunt's contentions regarding double jeopardy are correct. We, therefore, affirm Hunt's convictions as to the first and third counts of the indictment but reverse and render the conviction on the second count.

I.

Facts
¶ 2. Hunt and his wife were observed by store personnel in a Wal-Mart in Oktibbeha County to be gathering several purchases that included an unusually large number of packages of over-the-counter cold medication known to contain the chemical pseudoephedrine. Store personnel, aware that pseudoephedrine was a *992 precursor chemical used in the illegal manufacture of the controlled substance methamphetamine, alerted law enforcement authorities.
¶ 3. The authorities pulled over Hunt's vehicle after he had left the store and discovered that his purchases included more than 250 dosage units of cold pills, a number of batteries containing the precursor substance, lithium, and other products containing chemicals useful in the manufacture of methamphetamine. Hunt gave a voluntary statement in which he acknowledged that he had been asked to purchase the cold tablets and the lithium batteries by an individual identified as Tommy Howell and that Hunt was aware that Howell had been involved in the manufacture of methamphetamine in the past. He stated that Howell had given him one hundred dollars to make these purchases with the understanding that any sums left over would be retained by Hunt as compensation for his effort. Hunt claimed in his statement that the remaining products were purchased by him individually for use in wood finishing activities.
¶ 4. As a result of facts gathered in the investigation, Hunt was indicted in a three-count indictment that, in summary, charged (a) a violation of the provision of the Mississippi Code that prohibits the simultaneous possession of two or more chemicals appearing on a list of identified precursor materials used in the manufacture of methamphetamine substances under circumstances demonstrating that the possessor knew (or reasonably should know) that the drugs would be used to illegally manufacture methamphetamine, (b) a violation of the provision of the Mississippi Code that prohibits the possession of 250 dosage units of pseudoephedrine under circumstances where he knew or reasonably should have known the chemical was to be used in the illegal manufacture of methamphetamine, and (c) a conspiracy with Howell to possess these precursor chemicals.

II.

Multiple Punishments for the Same Conduct

A.

Multiplicity in the Indictment
¶ 5. Count One of the indictment, listing the precursor chemicals Hunt was alleged to possess simultaneously, named the following materials: pseudoephedrine, hexane, heptane, toluene, naptha, and lithium. Count Two alleged that he possessed "pseudoephedrine, in an amount in excess of Two Hundred Fifty (250) dosage units." There is no dispute that the quantity of pseudoephedrine described in Count One is the same quantity of the drug that is identified in Count Two.
¶ 6. At the conclusion of the proof, Hunt contended that he was, in effect, being charged with two distinct crimes for the same underlying conduct. He argued that he was exposed to punishment for the act of possession of the pseudoephedrine yet, because possession of the same pseudoephedrine was an essential element of Count Two, he was subject to a second punishment for the same conduct in violation of the double jeopardy protection afforded him in such circumstances. Blockburger v. U.S., 284 U.S. 299, 303-04, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
¶ 7. The trial court, expressing concern over that circumstance, attempted to resolve the problem by dropping the allegation concerning pseudoephedrine from the jury instruction defining the elements of Count One on the theory that, since the count recited more than the minimum of two precursors necessary to support that *993 charge, there were enough remaining forbidden substances listed to sustain a conviction on that count without consideration of the pseudoephedrine.
¶ 8. Section 41-29-313(1)(a)(ii) makes it illegal to
possess any two (2) or more of the listed precursor chemicals or drugs in any amount, knowing, or under circumstances where one reasonably should know, that the listed precursor chemical or drug will be used to unlawfully manufacture a controlled substance.
Miss.Code Ann. § 41-29-313(1)(a)(ii) (Supp.2003). Section 41-29-313(3) contains the referenced list which numbers twenty-three suspect materials. It is sufficient for our discussion to note that the list includes pseudoephedrine, heptane, toluene, and lithium, which were the chemicals shown by the State's proof at trial to have been in Hunt's possession.
¶ 9. This Court doubts the authority of the trial court to alter the nature of the charges in the manner that it did in this case. By omitting the charge of possession of pseudoephedrine from the instructions defining the elements of Count One under these circumstances, the court effectively amended the indictment to omit an allegation of possession of pseudoephedrine from consideration in Count One, not on the basis of a failure of the proof, but because the State needed to "borrow" that factual allegation to sustain its contentions on another count in the indictment. It would appear that such a modification of an indictment was one of substance rather than form and, as such, could only be undertaken by action of the grand jury. Jones v. State, 279 So.2d 650, 651 (Miss.1973).
¶ 10. We, therefore, find it appropriate to consider Hunt's claims of double jeopardy on the basis of the provisions of the indictment in its "unamended" form. Viewed in that light, we are satisfied that the State has, in fact, attempted to punish Hunt under two separate criminal statutes for what is but a single criminal act. Certainly, under the facts, the State had the option of charging Hunt either for the simultaneous possession of two or more precursor chemicals, one of which was pseudoephedrine, or for the possession of 250 dosage units of pseudoephedrine. However, once the State elected to indict him on Count One for possession of two or more precursor chemicals in any amount and the list of those chemicals included pseudoephedrine, then Hunt was properly charged and exposed to criminal punishment for his alleged possession of the pseudoephedrine. Any further attempt to punish him separately for a crime that involved no separate or additional criminal activity beyond possession of the same pseudoephedrine mentioned in Count One would be multiplicitous and would necessarily expose Hunt to a second punishment for the exact same offending conduct for which he was already subject to punishment under the first count. "[Blockburger] charges that we compare statutory offenses, as indicted, and see whether each requires proof of a fact which the other does not." Meeks v. State, 604 So.2d 748, 751 (Miss. 1992). In this case, a conviction under Count One includes every fact that is necessary to obtain a conviction under Count Two except for the matter of the quantity of pseudophedrine discovered in Hunt's possession.
¶ 11. We do not think this additional consideration concerning quantity alone is enough to overcome double jeopardy considerations and expose Hunt to multiple punishments for the same conduct. While it may be true that the language of Section 41-29-313(1)(a)(i) regarding "any amount" of the prohibited substances was primarily intended to cover situations where lesser *994 quantities of the suspect materials were discovered and, therefore, the showing of multiple items was required to strengthen the inference of wrongful intent, it is nevertheless true that "any amount" plainly means just thatany amount. Therefore, the possession of 250or 250,000, for that matterdosage units of pseudoephedrine simultaneously with the possession of any one of the other prohibited substances listed in the statute constitutes a consummated violation of Section 41-29-313(1)(a)(i), and, if a defendant is charged, convicted, and sentenced for that violation, it would plainly constitute a double jeopardy violation to attempt to punish him a second time for the possession of the exact same supply of pills, simply on the basis that the quantity happened to exceed the permissible level under a separate criminal statute. It is not uncommon for criminal statutes relating to drug possession to define differing levels of the offense in terms of maximum punishment depending on the quantity of the illegal substance possessed. Nevertheless, it would not appear appropriate for the State to be able to divide a large quantity of drugs discovered in the possession of a defendant into separate quantities, each meeting the minimum quantity set out in a particular statute, and thereby multiply the number of criminal charges to be brought. Though not directly analogous, the situation we face in this instance has some of the same similarities.
¶ 12. The double jeopardy considerations appear with some added clarity if one assumes the situation where a hypothetical defendant in Hunt's situation was indicted, convicted, and sentenced on a single count charging simultaneous possession of pseudoephedrine and another of the forbidden precursor chemicals and, before the statute of limitations had run, was indicted by another grand jury for possession of the same pseudoephedrine under the alternate provisions regarding possession of 250 dosage units. In that situation, there can be little doubt that double jeopardy considerations would bar the subsequent prosecution. That the attempt to extract multiple punishments for the same offending conduct occurred in the same prosecution does nothing to alter the proper outcome of Hunt's double jeopardy challenge.
¶ 13. For the foregoing reasons, we find it necessary to reverse and render Hunt's conviction under Count Two. See generally Thomas v. State, 711 So.2d 867, 870 (¶ ¶ 14-15) (Miss.1998) (discusses the Blockburger, or "same-elements" test, for determining whether double jeopardy bars additional punishment and successive prosecution).

B.

Conspiracy and the Crime Itself as Double Jeopardy
¶ 14. Additionally, Hunt contends that he is being punished twice for the same underlying offense because he stands convicted for conspiring to possess these illegal substances and also for actually possessing them. He contends that, upon completion of the crime itself, the two offenses merge. This claim is without merit. Case law makes it plain that conspiring to commit a crime is a separate offense that is complete once the conspiracy is undertaken, an event that necessarily precedes the actual commission of the planned crime. State v. Thomas, 645 So.2d 931, 933 (Miss.1994). As such, the two offenses are considered separate criminal violations separately punishable without invoking considerations of double jeopardy. Id. This issue is without merit.

III.

Weight of the Evidence
¶ 15. Hunt points out that all of the materials found in his possession are legally-permissible *995 substances readily available for purchase by the general public. He additionally suggests that the proof showed that it would take additional materials beyond those found in his possession to actually manufacture illegal methamphetamine substances. From those two premises, Hunt suggests that the evidence did not warrant a conviction.
¶ 16. In his brief, Hunt appears to blend two separate contentions. One is that the evidence was insufficient as a matter of law to sustain a verdict of guilty. The other is that the verdict was against the weight of the evidence. These are two related but different propositions. This is best illustrated by the marked difference in the relief afforded an appellant who prevails on one or the other contentions. If the evidence is determined on appeal to be insufficient as a matter of law to support the conviction, then the appellant is entitled to have his conviction reversed and rendered on principles arising out of double jeopardy considerations. Moore v. State, 755 So.2d 1276, 1280-81 (¶ ¶ 15-16) (Miss.Ct.App.2000). However, if the determination is that the verdict was against the weight of the credible evidence, then double jeopardy is not an issue, and the relief afforded is that the conviction be set aside and the matter remanded to the trial court for a new trial. Id.
¶ 17. In this instance, we find it unnecessary to attempt to unravel Hunt's contentions and address each one separately. His argument is not, in actuality, an attack either on the weight or the sufficiency of the evidence establishing his guilt. It is, rather, an attack on the statute itself as being an attempt to criminalize conduct that is not, in fact, criminal since every item he was charged with possessing is legally available for purchase by the general public.
¶ 18. We find this argument to be without merit. The statutory scheme intended to achieve the worthy objective of halting or impeding the illegal production of harmful narcotic substances prohibits the possession of these otherwise legal substances only in circumstances where the State can demonstrate beyond a reasonable doubt that the defendant knew or where he reasonably should know that the possession was in furtherance of the production of such illegal substances. Miss.Code Ann. § 41-29-313 (Supp.2003). The statute provides some safeguards from overzealous prosecutions by limiting the offense to situations where two or more of the suspect items are possessed at the same time or, with regard to over-the-counter cold medicine, where the quantity would appear to be excessive for any legitimate anticipated use of such a product.
¶ 19. In the case before us, Hunt admitted in his statement that he was requested to purchase these materials by another individual in return for a cash compensation under circumstances where Hunt was aware that this individual had been previously involved in the manufacture of illegal methamphetamine substances. The evidence showed that, in the interim period from leaving the Wal-Mart store and the subsequent stop by investigating officers, Hunt and his wife had attempted to conceal the cold tablets inside the vehicle, offering support to an inference of the requisite guilty knowledge on Hunt's part. Hunt offered no evidence that would suggest an exculpatory explanation for his possession of these materials. In that circumstance, we conclude that the evidence, viewed in the light most favorable to the State, was sufficient to support a conviction on both Counts One and Three and that the verdicts on those counts were not so against the weight of the evidence that to permit them to stand *996 would constitute a manifest injustice. Montana v. State, 822 So.2d 954, 967-68 (¶ 61) (Miss.2002).
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION, AS AN HABITUAL OFFENDER, ON COUNT 1 OF POSSESSION OF METHAMPHETAMINE AND SENTENCE OF LIFE AND ON COUNT 3 OF CONSPIRACY TO POSSESS METHAMPHETAMINE AND SENTENCE OF LIFE, WITH SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED; HOWEVER, CONVICTION ON COUNT 2 OF POSSESSION OF METHAMPHETAMINE AND SENTENCE OF LIFE IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.