885 So.2d 723 (2004)
Harry JACKSON, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00384-COA.
Court of Appeals of Mississippi.
May 25, 2004.
Rehearing Denied September 7, 2004.
Certiorari Denied November 4, 2004.
*725 James H. Arnold, Durant, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS, IRVING and GRIFFIS, JJ.
THOMAS, J., for the Court.
¶ 1. Harry Jackson, Jr. was convicted in the Circuit Court of Amite County of sale of a schedule II controlled substance and was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections, with fifteen to serve and the remaining five years on post-release supervision. Aggrieved, he asserts the following issues on appeal:
I. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT AND, ALTERNATIVELY, THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. PROSECUTORIAL MISCONDUCT DENIED JACKSON A FAIR TRIAL.
III. THE TRIAL COURT ERRED IN FAILING TO GIVE AN INSTRUCTION THAT SANDER'S PRIOR INCONSISTENT STATEMENT COULD NOT BE USED AS SUBSTANTIVE EVIDENCE.
Finding no error, we affirm.

FACTS
¶ 2. On April 2, 2001, Mississippi Bureau of Narcotics agents prepared to make a purchase of narcotics in Amite County, Mississippi. The agents met with a confidential informant and decided to attempt to purchase narcotics from Reginald Graves. Agent Jason Powell went undercover with the confidential informant after the usual preliminary matters were completed. When Graves was contacted at his residence, he told Powell that he did not have any drugs on hand. Graves got in the car with the informant and Powell and took them to a location in Gloster, Mississippi. Another agent followed in an unmarked car and listed to a wireless transmission from Agent Powell.
¶ 3. At the location in Gloster, Graves got out of the car and went and talked to a group of men. He returned and they left the area. They drove around for a few minutes and returned. Graves again got out of the car and returned again, telling Powell and the informant that the drugs still needed to be weighed and that they had to leave and come back shortly. Graves, Powell, and the informant left and went to the Car Quest auto parts store in Gloster. A short while later, a car passed and Graves remarked that the drugs were in that car and that they could return to the location to pick them up. They returned and pulled in behind the car that had passed them at the Car Quest. When Graves got out of the car, Powell radioed the tag number in to other agents. The car was registered to Harry Jackson, Jr.
¶ 4. Graves approached two men standing near the car and separate from the others. He returned to the car and asked for money. Powell gave Graves $850. Graves returned to the two men. After some movements with their hands, Graves returned to the vehicle with a bag of white powder. Graves elected to stay at the location and not leave with the informant and Powell. Upon leaving, Powell rendezvoused *726 with the other agents. Powell identified through photo identification Harry Jackson and Murphy Sanders as the two men Graves dealt with in the cocaine buy. The substance sold to Powell was 25.3 grams of cocaine.
¶ 5. At trial, Agent Powell testified along with Agent Sheldon Joliff, the agent that had monitored the wireless transmission and followed in an unmarked car. Powell testified that Jackson's car was the vehicle Graves said carried the drugs, that it was present at the scene, and that Jackson was one of the two people to whom Graves had given the money and gotten the cocaine.
¶ 6. The defense presented its case by first calling Graves to testify. Graves testified that his cousin, Navaree Green, was driving Jackson's car because he had been in the process of buying the car from Jackson. Graves testified that Jackson was not present on that particular day at the scene and that Green was the individual who had participated in the sale of the cocaine. Graves admitted that Green was a short, stout man and Jackson was a tall, slender man and that it would be difficult to confuse the two. Graves also testified that Green had died prior to trial and was unavailable to testify. Graves testified that Powell had been drinking beer and that Jackson's car was burgundy rather than green as testified to by Powell and Joliff.
¶ 7. Jackson called Murphy Sanders to testify. Sanders admitted to being at the scene although he did not know if Jackson was there or not. He also testified that he did not know Navaree Green and could not say if he was present. Sanders testified that he did not know of any sale of cocaine and had not taken part in the sale. Upon this testimony, the district attorney asked Sanders if he made a statement to a deputy after his arrest that Jackson was present and that Jackson had offered Sanders $100 if he would help Jackson sell some dope. Sanders admitted talking to the deputy and at one point admitted telling the deputy that he took credit that day because of his children. Sanders would neither confirm or deny the other statements testifying instead that he did not know or could not remember what he told the deputy.
¶ 8. The defense then called Nekiesha Simmons, Jackson's ex-girlfriend. Simmons invoked her Fifth Amendment privilege against self-incrimination and refused to testify. The court held an off-the-record hearing regarding Simmons's testimony and decided to treat her as an unavailable witness. In doing so, the court allowed sworn testimony by Simmons given at a previous hearing. In the testimony, Simmons stated that she was in Massachusetts in April 2001 and that Jackson had flown up to see her in Massachusetts for two weeks at the beginning of April and he could not have been present in Amite County, Mississippi, on April 2, 2001. At the time of the testimony, Simmons was employed in Georgia in law enforcement, but she had not attempted to contact anyone or do anything to help Jackson prior to her testimony. Simmons stated that Jackson's sister worked for Continental Airlines and that Jackson flew Continental because his sister could provide him with inexpensive tickets.
¶ 9. In rebuttal, the State called a supervisor of ticket documentation for Continental Airlines. She testified that Jackson did fly to the Northeast in April 2001, but not until April 20. The information showed Jackson returned on April 23. She testified that Jackson had an electronic ticket and that he would have had to show photo identification in order to board the flights. The State then introduced documentation received from the defense which showed a flight by Jackson on March 31 with a *727 return date of April 23. The supervisor noted that all of the flight numbers and data were the same as on her official records and concluded that the documents showing a departure of March 31 were forged. She testified that it would have had to have been done on a typewriter or computer outside of Continental because Continental's records have not been altered.
¶ 10. The State then called Deputy Tim Wroten, the deputy that had talked to Murphy Sanders at his arrest. Wroten admitted that he did not take an official statement from Sanders but testified that Sanders told him that Jackson had gotten the cocaine in McComb and offered Sanders $100 to help him sell it. Wroten testified that Sanders told him the cocaine would not sell in McComb because it was low quality so it was brought to Gloster and that it was not worth the $100 Jackson had offered him. At the conclusion of trial, the jury returned a guilty verdict.

I. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE VERDICT AND, ALTERNATIVELY, WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 11. Jackson argues that the evidence was insufficient to support the verdict, and, alternatively, the verdict was against the overwhelming weight of the evidence. Jackson asserts in his brief that at most, the prosecution proved that he was present at the scene of a drug deal. According to Jackson, there was not proof beyond a reasonable doubt that both of the men were involved in the drug deal and that, if only one man was involved, it was Jackson.
¶ 12. The State argues that the evidence was sufficient, with testimony clearly implicating Jackson as being one of the two men from whom Graves obtained cocaine. The State also makes note that Jackson's car was at the scene and that Graves remarked that it carried the cocaine when it passed the Car Quest parking lot. In support of its argument, the State refers this Court to Hollins v. State, 799 So.2d 118 (Miss.Ct.App.2001), which dealt with a constructive sale. In Hollins, this Court stated, "it is not necessary that the defendant exercised dominion or control over the drugs; simply that he aided and abetted in the sale is enough to make him guilty as a principal in the crime." Hollins, 799 So.2d at 121(¶ 6) (citing Turner v. State, 573 So.2d 1340, 1341 (Miss.1990)).
¶ 13. A motion for a directed verdict, request for peremptory instruction, and motion for judgment notwithstanding the verdict all challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the court should accept as true all credible evidence consistent with the defendant's guilt and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 14. The prosecution provided evidence that Jackson was present and intimately involved with the sale of cocaine to the undercover agent through Graves. It need not prove that Jackson handed the cocaine directly to the agent or that he personally profited from the sale in order to be found guilty as a principal. Turner, *728 573 So.2d at 1342 (citing Miss.Code Ann. Section 97-1-3 (Rev.2000)).
¶ 15. The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is also well settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 9) (Miss.1998)). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Collins, 757 So.2d at 337(¶ 5) (citing Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992)). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins, 757 So.2d at 337(¶ 5) (quoting Dudley, 719 So.2d at 182).
¶ 16. Jackson's defense at trial amounted to his claim that he was not at the scene of the sale. Graves testified that Jackson was not there, but instead a deceased cousin, who was buying Jackson's car, had participated in the drug deal. Graves admitted, however, that his cousin was a short, stout man and Jackson was a tall, slender man and that it would be difficult to confuse the two. Murphy Sanders also testified that Jackson was not present at the scene. Sanders' testimony was impeached with statements he made to the police incident to his arrest. Jackson then called a former girlfriend who was to testify that he had been in Massachusetts with her at the time of the sale. The former girlfriend pled the Fifth and prior testimony was admitted instead. Airline records were later used to impeach her testimony. Jackson now attempts to have his proverbial cake and eat it too as he argues that the State at most, proved he was present at a drug sale.
¶ 17. The trial court correctly instructed the jury in instruction number two as follows:
The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in the conduct.
Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accursed deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or *729 persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
¶ 18. It is for the jurors to resolve conflicts in testimony. Hollins, 799 So.2d at 122(¶ 10). They may accept or reject any utterances they hear based upon hearing and observing the witnesses as they testify. Id. (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). The reviewing court cannot and need not determine which witness or testimony the jury believed or disbelieved; it is enough that the conflicting evidence presented a factual dispute for jury resolution. Id."The jury is the sole judge of credibility of witnesses and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Id. (quoting Billiot v. State, 454 So.2d 445, 463 (Miss.1984); Harrigill v. State, 381 So.2d 619, 623 (Miss.1980); Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980)). This issue is without merit.

II. DID PROSECUTORIAL MISCONDUCT DENY JACKSON A FAIR TRIAL?
¶ 19. Jackson asserts that the testimony of Tim Wroten was not exactly as it was characterized to be by the prosecution. Wroten was called in rebuttal to testimony given by Murphy Sanders on cross-examination. Jackson argues that Wroten's testimony provided the missing link needed by the prosecution to convict Jackson, and that the prosecution's actions were in bad faith and provided substantive evidence rather than simply to impeach credibility.
¶ 20. Jackson did not object on the ground of prosecutorial misconduct and did not raise this issue in his motion for a new trial. The only objection was a claim that the facts were not in evidence, which has not been renewed here. "An objection to the testimony of a witness, conduct of opposing counsel or a remark of the court should be made contemporaneously with the occurrence or matter complained of so that the court may, when possible, correct the error with proper instructions to the jury." Baker v. State, 327 So.2d 288, 292 (Miss.1976). Failure to raise a timely objection will bar the issue on appeal. Smith v. State, 724 So.2d 280 (¶ 168) (Miss.1998).
¶ 21. Notwithstanding the procedural bar, on cross-examination Sanders admitted talking to Tim Wroten. Sanders denied saying he and Jackson had sold cocaine, and denied specific information about Jackson obtaining the cocaine from McComb, offering Sanders $100 to help him sell it, and that Jackson had taken the money and handed the cocaine to Graves. Sanders stated that he took credit for the sale because of his children before retracting his statement and saying he did not remember what he told Wroten.
¶ 22. Wroten testified that Sanders told him Jackson had gotten the cocaine from McComb and had offered Sanders $100 to help him sell it. The prosecutor did not ask Wroten about Sanders's statements regarding Jackson taking the money and handing the drugs to Graves. As stated above, the prosecution did not have to prove Jackson handed the drugs to Graves or took the money in order to prove a constructive sale. Hollins, 799 So.2d at 121(¶ 6) (citing Turner v. State, 573 So.2d at 1341). Jackson has failed to show that the prosecutor acted in bad faith. The prosecutor had reason to ask Sanders about his statements to Wroten because they implicated Jackson and his involvement in the drug sale. Prosecutorial error, if any, was therefore harmless.

III. DID THE TRIAL COURT ERR IN FAILING TO GIVE AN INSTRUCTION *730 THAT SANDER'S PRIOR INCONSISTENT STATEMENT COULD NOT BE USED AS SUBSTANTIVE EVIDENCE?
¶ 23. Jackson asserts that the trial court erred in failing to give an instruction that Sanders's prior inconsistent statement could not be used as substantive evidence. Jackson did not request such an instruction from the trial court. In Russell v. State, 607 So.2d 1107, 1117 (Miss.1992), the Mississippi Supreme Court held that failure to request a jury instruction renders the issue moot on appeal. Jackson relies on Moore v. State, 755 So.2d 1276 (Miss.Ct.App.2000), in which this Court reversed finding plain error in the lack of an instruction that was not requested at trial. In Moore, this Court found that without the inconsistent statements the evidence was severely diminished. Moore, 755 So.2d at 1280(¶ 13). It was noted that the evidence was "weak and alone may be insufficient to connect Moore to the crime spree." Id. at (¶ 14). The Court therefore found that Moore was denied his fundamental right to a fair trial. Id. at (¶ 23).
¶ 24. Moore is a different situation than the case at bar. Jackson's connection with the cocaine and its constructive sale was established through the testimony of the undercover agent. The State's case was much stronger than the case in Moore. The trial judge instructed the jury regarding the credibility of witnesses and that it was its task to weigh the testimony and evidence in the case. An instruction such as this has been held to be sufficient to meet any requirement of an instruction in the instance of an inconsistent statement. Swann v. State, 806 So.2d 1111, 1117(¶ 23) (Miss.2002). Error, if any, was harmless. This issue is without merit.
¶ 25. THE JUDGMENT OF THE AMITE COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF A SCHEDULE II CONTROLLED SUBSTANCE, COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FIFTEEN YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION AND FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.