# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 5, 2010

Charles R. Fulbruge III
Clerk

No. 08-60248
Summary Calendar

HARRY L. JACKSON

Petitioner - Appellant

v.

MISSISSIPPI DEPARTMENT OF CORRECTIONS; MARGARET
BINGHAM; JACKIE PARKER; JIM HOOD

Respondents - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:05-CV-239

ON PETITION FOR REHEARING

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The petition for rehearing is DENIED. The Court's opinion issued on November 23, 2009 is hereby withdrawn, and the following opinion is substituted:

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Petitioner Harry L. Jackson appeals from the district court's denial of his petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. Jackson was convicted in 2003 following a jury trial in a Mississippi state court of the sale of a Schedule II controlled substance, and subsequently sentenced to a term of twenty years imprisonment, with the final five years served on post-release supervision in lieu of incarceration. After unsuccessfully pursuing his direct appeals, Jackson filed the instant petition for a writ of habeas corpus on April 11, 2005. The district court denied Jackson's petition, dismissed it with prejudice, and thereafter denied his request for a certificate of appealability. We granted Jackson a certificate of appealability as to only one issue: whether there was insufficient evidence to support his conviction, resulting in a violation of his constitutional right to due process as interpreted by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). For the reasons set forth below, we affirm the judgment of the district court.

## I. BACKGROUND

On February 11, 2003, petitioner was convicted following a jury trial of a single count of Sale of a Schedule II Controlled Substance (cocaine), in violation of Miss. Code Ann. § 41-29-139. The magistrate judge's report and recommendation, as adopted by the district court, summarized the background facts of petitioner's trial:

> Petitioner's arrest, indictment and conviction arose out of an undercover drug sting operation executed by agents of the Mississippi Bureau of Narcotics (MBN). At trial, the testimony of Sheldon Jolliff and Jason Powell, two of the agents, established the following. On April 2, 2001, several MBN agents, including Powell, Jolliff, and Tim Wroten, met with a confidential informant (the CI) in Amite County and prepared for a purchase of narcotics from Reginald Graves. The CI and Powell, who was wired, drove to Graves' home in the CI's truck; Agent Jolliff followed in a separate unmarked vehicle and monitored the others' activities via the wireless transmission from Powell. When Powell and the CI arrived

at Graves' residence, Graves informed them that he did not have any drugs. He then entered the truck with Powell and the CI and directed them to a location on Ash Street in Gloster, Mississippi for the purchase. When they arrived, Graves exited the car and talked with several individuals. He then returned to the truck, saying that the individuals had the drugs but had not weighed them yet. Powell, the CI and Graves drove around the area for a few minutes and then returned to Ash Street. Graves again got out of the car, spoke with some of the individuals and then returned to the truck. Graves informed Powell and the CI that they needed to drive around a few minutes while the drugs were being weighed. They drove to the parking lot of an auto parts store in Gloster and waited. A short while later, a car passed, and Graves commented that the drugs which they were to purchase were in the passing car. Returning to the Ash Street location for the third time, they pulled in behind the car that had passed them earlier. Graves once again exited the car; after he had done so, Powell radioed in the tag number of the car and learned that it was registered to Petitioner. Powell and the CI watched while Graves approached two men standing about ten yards away from the truck and apart from the other individuals at the scene. Graves walked back to the truck and requested the purchase money, eight-hundred and fifty dollars, from Powell. Powell gave Graves the cash, which had been provided to Powell by Jolliff, and Graves returned to the two men. Powell saw the three men and Graves exchange something with their hands. Graves returned to the truck with a bag of cocaine. Powell and the CI then left the scene; Graves remained. After rendezvousing with Jolliff and the other agents, Powell, using photographs, identified the two men as Murphy Sanders and Harry Jackson.

Graves testified for the defense. He maintained that Jackson was not present or involved in any way with the sale; rather he claimed that the second individual who participated in the sale along with Sanders was Graves' cousin, Navaree Green. He explained that Green was driving Jackson's car because Green was in the process of purchasing it from Jackson. According to Graves, Powell was drinking beer during the operation. Murphy Sanders also testified on behalf of Jackson. He admitted being present at the scene but said he did not see Jackson there. He also stated that he did not know Navaree Green and did not know if Green had been

present. Sanders denied any knowledge of or participation in a drug sale at the Ash Street location on the evening in question.

The defense called Nekiesha Simmons, a former girlfriend of Jackson, as an alibi witness. After Simmons invoked her Fifth Amendment right against self-incrimination and refused to testify, the court determined her to be unavailable and allowed prior sworn testimony given by her to be admitted into evidence. In that testimony, Simmons stated Jackson had flown to Massachusetts to visit her for two weeks in the beginning of April of 2001 and therefore could not have been present in Amite County on April 2, 2001. Simmons explained that Jackson's sister worked for Continental Airlines and that Jackson flew Continental because his sister could provide him with inexpensive tickets.

The prosecution called as a rebuttal witness Denise Locke, a supervisor of ticket documentation with Continental Airlines. She testified that Jackson flew to the northeast in April of 2001, but not until April 20. Her documentation also showed that Jackson returned on April 23. The state then introduced flight documents obtained from the defense which showed that Jackson had departed on March 31. The witness noted that all of the flight information on the documents other than the departure date matched her official records. She concluded that the document showing a March 31 departure date was forged.

Agent Tim Wroten testified for the state in rebuttal. He stated that Murphy Sanders had told him that Jackson had given Sanders one hundred dollars for his participation in the sale.

*Jackson v. Miss. Dep't of Corrections*, Report and Recommendation, 3:05-CV-239-HTW-JCS, at slip op. at 2-5 (S.D. Miss. Apr. 4, 2007). The trial court sentenced petitioner to a twenty-year term of imprisonment, with the last five years suspended, and an additional five-year term of supervised release.

## II. STANDARD OF REVIEW

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court." *Thompson*

*v. Cain*, 161 F.3d 802, 805 (5th Cir. 1998); *see also Beazley v. Johnson*, 242 F.3d 248, 255 (5th Cir. 2001).

## III. DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant against conviction "except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). In applying this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* As a federal habeas court, "we must defer to the factual findings in the state court proceedings" and "respect the ability of the fact-finder to evaluate the credibility of the witnesses." *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).

Under 28 U.S.C. § 2254(a), the federal courts have jurisdiction to hear a petition for a writ of habeas corpus made on behalf of a person in custody pursuant to the judgment of a state court. That jurisdiction may be exercised only for the purpose of determining whether that person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court's power to grant habeas relief is limited by AEDPA, as codified at 28 U.S.C. § 2254(d). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law[] as determined by the Supreme Court of the United States" means "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

State law supplies the substantive elements of the offense. *Jackson*, 443 U.S. at 324 n.16. Mississippi law provides that it is illegal to "knowingly or intentionally . . . sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." *Dunlap v. State*, 956 So.2d 1088, 1091 (Miss. App. 2007) (citing Miss. Code Ann. § 41-29-139). Mississippi courts have explained the level of involvement that must be proved for a defendant to be found guilty of sale of a controlled substance. "To prove sale of a controlled substance, the State need not prove that the defendant personally placed the substance in the hands of the buyer or that the defendant personally profited from its sale." *Spann v. State*, 970 So. 2d 135, 137-38 (Miss. 2007). Rather, the State need only prove "substantial knowing participation in the consummation of a sale or in arranging for the sale." *Williams v. State*, 463 So. 2d 1064, 1066 (Miss.1985). Thus, "[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender," provided that the proper jury instructions are given. *Spann*, 197 So. 2d at 138 (internal quotation marks and citation omitted). Stated differently, "only a minimal involvement in an illegal drug transaction is sufficient to support a criminal conviction for drug trafficking." *Flowers v. State*, 726 So. 2d 185, 187 (Miss. App. 1998).

Petitioner argues that there was insufficient evidence that he "sold" the controlled substance, resulting in a violation of the Due Process Clause of the Fourteenth Amendment. Specifically, petitioner contends that the State introduced no evidence that he "knowingly participated" in the sale; instead, he argues, the State only offered evidence that he was at the scene of the transaction. The Mississippi Court of Appeals considered and rejected this argument on direct appeal, concluding that there was sufficient evidence to support the conviction. *See Jackson v. State*, 885 So.2d 723, 728-29 (Miss. Ct. App. 2004). This was not an unreasonable application of the Supreme Court's decision in *Jackson v. Virginia* because there was sufficient evidence for the jury to conclude that petitioner had "minimal involvement" in the illegal drug transaction. Aside from providing substantial evidence that petitioner was present at the transaction, Agent Powell testified that although he "didn't see anything go hand in hand," he "did . . . see those three individuals [Graves, Jackson, and Sanders] doing something over there with their hands," and that he saw Jackson "doing stuff with his hands." And the two men arrived at the transaction in a car belonging to petitioner, which Graves had previously described as containing the cocaine. The jury was entitled to credit this evidence to find that petitioner had "substantial knowing participation in the consummation of a sale or in arranging for the sale." *Williams,* 463 So. 2d at 1066. Accordingly, we conclude the state court's ruling was not contrary to, nor did it involve an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.